District Judge James L. Robart

1
2
3
4
5
6
7            UNITED STATES DISTRICT COURT FOR THE
             WESTERN DISTRICT OF WASHINGTON
8                       AT SEATTLE

9
JULIO CURY and TAKAO YAMADA,              Case No. 2:23-cv-00499-JLR
10
                        Plaintiffs,       DEFENDANTS' MOTION FOR
11          v.                            SUMMARY JUDGMENT

12  DEPARTMENT OF STATE, *et al*.,        Noted for Consideration:
                                          November 12, 2024
13                      Defendants.

14

15          The Court should grant Defendants' motion for summary judgment in this Freedom of

16  Information Act (FOIA) case.  The parties have resolved many issues and all that remains are

17  those issues identified by Plaintiffs in September 2024 that are "in need of Court resolution."

18  When this case was initially filed, Plaintiffs purported to bring claims based on five FOIA

19  requests made to four federal agencies.  *See* Dkt. 1.  But the parties met and conferred over a

20  period of months and resolved multiple disputes.  As such, Plaintiffs have abandoned their

21  claims against U.S. Customs and Immigration Services (USCIS) and U.S. Department of

22  Homeland Security.  *See* Dkts. 14, 17 (identifying resolution of Counts 4-5 and parts of other

23  disputes).  This litigation is narrowed to two FOIA requests made to the U.S. Department of

24  State (State) and one to U.S. Customs and Border Protection (CBP).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Following the resolution of some claims and disputed issues, the parties stipulated, and

2    the Court ordered that prior to briefing summary judgment: "Plaintiffs will identify any issues

3    Plaintiffs believes are in need of Court resolution by email to Defendants." *See* Dkt. 18.  In

4    September 2024 Plaintiffs provided a list of all challenges for this Court's resolution:  Plaintiffs

5    dispute the reasonableness of State's search; certain withholdings by State under FOIA

6    Exemptions 3, 5 (deliberative process privilege), and 7(E); certain withholdings by CBP under

7    Exemption 7(E); and an issue of waiver in a single CBP document.  For the reasons set forth

8    below, the Court should grant summary judgment in favor of Defendants and dismiss all counts.

9    ## I.   FACTUAL BACKGROUND

10   **A. State's response to Plaintiffs' FOIA requests.**

11   Plaintiffs challenge certain aspects of State's response to two FOIA requests.  In the first,

12   assigned control number F-2023-00026 (Request F-2023-00026), Plaintiffs asked for "copies of

13   all records, including emails, pertaining to the revocation of the visa previously held by Mr.

14   Cury." *See* Declaration of Timothy J. Kootz (Kootz Decl.) ¶¶ 6-7, Ex. 2.  In the second, assigned

15   control number F-2023-07562 (Request F-2023-07562), Plaintiffs asked for "an electronic copy

16   of all records, including emails, in the U.S. Embassy in Santo Domingo, including but not

17   limited to the Regional Security Office, including any permutations of Mr. Cury's name

18   (including permutations which lack 'David')." *Id.* ¶¶ 9-10, Ex. 3.  These two requests appear to

19   overlap to the extent that they both relate to the same individual, "Mr. Cury," however, they are

20   not coextensive and instead call for distinct types of records.  Request F-2023-00026 pertains

21   only to records regarding "revocation of the visa previously held by Mr. Cury," whereas Request

22   F-2023-07562 asks only for records pertaining to Mr. Cury that are held in a certain location, i.e.,

23   "in the U.S. Embassy in Santo Domingo."

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

State made multiple releases of documents to Plaintiffs for FOIA Requests F-2023-00026 and F-2023-07562 throughout 2023 and 2024.  *See* Kootz Decl. ¶¶ 6-13.  Following the parties' conferral process, State also conducted a supplemental search, as a result of which it produced an additional document to Plaintiff, and State re-processed a previously produced document to release additional information to Plaintiffs.  *See id*. ¶¶ 12-13.  At the conclusion of the parties' efforts to resolve this litigation short of motions practice, Plaintiffs' counsel communicated to State that Plaintiffs dispute the reasonableness of State's search for documents and its withholdings under FOIA Exemptions 3, 5 (deliberative process privilege), and 7(E).[1]

The contemporaneously filed Kootz Declaration explains State's search process, reasonably calculated to uncover all relevant documents.  *See* Kootz Decl. ¶¶ 14-28, 58.  It also attests to the factual and legal basis of State's FOIA withholdings under FOIA Exemptions 3, 5 (deliberative process privilege), and 7(E).  *See id*. ¶¶ 29-58.  In searching for documents relevant to FOIA Requests F-2023-00026 and F-2023-07562, the State Department's Office of Information Programs and Services (IPS) first analyzed the requests to determine which "offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested."  *Id*. ¶ 14.  Based on IPS's knowledge and familiarity with State's records systems, IPS determined that the State Department components reasonably likely to maintain all responsive records for both FOIA Requests were (1) the Directorate of Visa Services in the Bureau of Consular Affairs (CA/VO), (2) the Bureau of Diplomatic Security (DS), and (3) the U.S. Embassy in Santo Domingo, Dominican Republic.  *Id*. ¶ 16.  IPS therefore tasked these

---

[1] Plaintiffs do not challenge any other aspect of State's responses to these FOIA requests.  For example, Plaintiffs do not challenge State's privacy related withholdings under FOIA Exemption 6 or 7(C).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  components with conducting searches for relevant records based on their knowledge and

2  expertise concerning their various records systems. *Id.* ¶¶ 15-17.

3      ***Directorate of Visa Services in the Bureau of Consular Affairs***.  As described in the

4  Kootz Declaration, the CA/VO manages all aspects of visa services for foreign nationals who

5  wish to enter the United States.  *See* Kootz Decl. ¶ 18.  It maintains records pertaining to visa

6  applications in a central electronic database called the Consular Consolidated Database (CCD),

7  which includes a number of different databases all concerning visa applications.  *Id.*  Therefore,

8  for Request F-2023-00026, a Consular Officer for the Office of Domestic Operations within

9  CA/VO searched the CCD database using Mr. Cury's name and date of birth.  State processed

10  and released all relevant, non-exempt documents located as a result of this search.  *Id.* ¶ 19.

11      For Request F-2023-07562, a Consular Officer at the U.S. Embassy in Santo Domingo

12  searched the Non-Immigrant Visa Unit and the Consular Correspondence Unit's shared drive and

13  email account.  *See* Kootz Decl. ¶ 20.  An initial search was conducted using the search term

14  "David, Julio," with the date range January 22, 1968, to July 19, 2023.  *Id.*  A supplemental

15  search was conducted using the search terms "Julio Cury," "Julio Miguel Cury," and "Julio

16  Miguel David," with the date range January 22, 1968, to July 25, 2023.  *Id.*  State processed and

17  released all relevant, non-exempt documents located as a result of these searches.  *Id.*

18      ***Bureau of Diplomatic Security***.  DS is responsible for providing a safe and secure

19  environment for the conduct of U.S. foreign policy.  *See* Kootz Decl. ¶ 21.  Some of DS's

20  responsibilities include investigation of passport and visa fraud, conducting personnel security

21  investigations, and training foreign civilian law enforcement officers in disciplines designed to

22  reduce the threat and repercussions of terrorism.  *Id.*  Upon review of the requests, a Division

23  Team Lead at DS's Freedom of Information and Privacy Act Office (DS/MGT/FOIA-PA)

24  determined that DS would only be reasonably likely to have records responsive to Request F-

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    2023-07562 and not Request F-2023-00026.  *Id.* ¶ 23.  That is because the Team Lead

2    determined that all material related to a visa application would be maintained in the CCD, not in

3    a DS record system.  *Id.*

4           For Request F-2023-07562 then, the Division Team Lead tasked a Regional Security

5    Officer (RSO) at the U.S. Embassy in Santo Domingo with searching RSO Santo Domingo files.

6    An Assistant RSO, who was knowledgeable about Embassy's records system, conducted a

7    search of paper and electronic RSO files using multiple iterations of Mr. Cury's name, "Julio

8    Miguel Cury David," without any date restriction.  *See* Kootz Decl. ¶ 24.  State processed and

9    released all relevant, non-exempt documents located as a result of these searches.  *Id.*

10          ***U.S. Embassy in Santo Domingo, Dominican Republic***.  Request F-2023-07562

11   specifically calls for documents pertaining to Mr. Cury maintained "in the U.S. Embassy in

12   Santo Domingo," therefore, IPS tasked the Embassy with conducting a search for all responsive

13   records to that request.  *See* Kootz Decl. ¶¶ 16-17, Ex. 3.  An Economic Officer at the Embassy

14   who was knowledgeable of both the Embassy's record systems and Request F-2023-07562

15   determined that, based on the subject of the request, the only Embassy section reasonably likely

16   to maintain responsive records was the Political/Economic Section.  *Id.* ¶ 26.  Therefore, the

17   Economic Officer conducted a search of an unclassified shared and individual drive using the

18   search terms "Cury," "Julio Cury," or "Julio Miguel Cury David," and a date range of January 1,

19   2001, to July 3, 2023.  *Id.*  In addition, another search of a classified shared electronic drive was

20   conducted using the search term, "Julio Miguel Cury David" and date range of January 1, 2005,

21   to July 1, 2023.  *Id.* ¶ 27.  State processed and released all relevant, non-exempt documents

22   located as a result of these searches.  *Id.* ¶ 28.

23          Finally, in making the FOIA releases identified above, State withheld documents and

24   information under various FOIA exemptions.  In so doing, the Kootz Declaration attests that

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    State undertook a page-by-page, line-by-line segregability analysis in order to release all

2    reasonably segregable, non-exempt information.  *See* Kootz Decl. ¶¶ 57-58.  Plaintiffs challenge

3    State's withholdings under FOIA Exemptions 3, 5, and 7(E).  The Kootz Declaration and

4    accompanying *Vaughn* index attest to the bases of State's withholdings.  *Id*. ¶¶ 5, 29-58, Ex. 1.

5    They provide that State withheld information under FOIA Exemption 3 that is exempt pursuant

6    to Section 222(f) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1202(f), which

7    protects information pertaining to the issuance or denial of a visa.  *Id*. ¶¶ 30-34, Ex. 1.  They

8    explain that State withheld information under FOIA Exemption 5 pursuant to the deliberative

9    process privilege regarding Mr. Cury's eligibility for a non-immigrant visa that was pre-

10   decisional, reflected employee deliberations, and the release of which would cause foreseeable

11   harm to State.  *Id*. ¶¶ 35-44, Ex. 1.  And they attest that State withheld information under

12   Exemption 7(E) that could reveal law enforcement techniques used by the Department to assess

13   an applicant's eligibility for a visa.  *Id*. ¶¶ 45-56, Ex. 1.

14       **B.  CBP's response to plaintiffs' FOIA request.**

15           Plaintiff Cury requested records from CBP's Arrival and Departure System, which

16   concerns information generated when Plaintiff traveled to and from the United States.  Howard

17   Decl., ¶ 5.  Whenever an individual presents at a Port of Entry, CBP will query its law

18   enforcement databases and records to help assess whether that individual should be admitted or

19   whether there are law enforcement concerns.  CBP released 42 pages in response to that request.

20   *Id.* at ¶ 4, Exhibit 1.  Plaintiff is not challenging the reasonableness of CBP's search.  Rather, he

21   is challenging a limited number of CBP's redactions that were made pursuant to Exemption

22   (7)(E).  CBP has provided a *Vaughn* index with an entry for each page of redactions.  Howard

23

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Decl., ¶ 7, Exhibit 2.[2]  Additionally, Plaintiffs incorrectly argue that CBP has waived any

2    reference to Plaintiff Cury's TECS ID because it inadvertently disclosed it in one document.

## II.                LEGAL STANDARDS

### A. FOIA

FOIA provides that any person has the right to obtain access to federal records subject to

the Act unless such records or portions of records are protected from public disclosure by one of

nine exemptions.  *See* 5 U.S.C. § 552.  The primary purpose of FOIA is to "ensure an informed

citizenry, [which is] vital to the functioning of a democratic society, [and] needed to check

against corruption and to hold the governors accountable to the governed."  *John Doe Agency v.*

*John Doe Corp.*, 493 U.S. 146, 152 (1989) (internal quotation omitted).  Accordingly, a

requestor's "rights under FOIA are neither increased nor decreased by reason of the fact that it

claims an interest . . . greater than that shared by the average member of the public: The Act is

fundamentally designed to inform the public about agency action and not to benefit private

litigants."  *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 n.5 (9th Cir. 1997)

(internal quotation omitted).

But the public's interest in government information is not absolute.  "Congress

recognized that legitimate governmental and private interests could be harmed by release of

certain types of information."  *Sea Shepherd Legal v. NOAA*, 516 F. Supp. 3d 1217, 1227 (W.D.

Wash. 2021) (internal quotation omitted).  This balance is reflected in FOIA's overall structure,

which mandates disclosure of government records unless the requested information falls into one

of nine exemptions. 5 U.S.C. § 552(b).

---

[2] Five pages were produced in their entirety, thus the *Vaughn* index accounts for 37 of the 42 released pages.
Howard Decl., ¶ 6.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2      **B.  Summary judgment in FOIA cases.**

3          "Summary judgment is the procedural vehicle by which nearly all FOIA cases are

4   resolved." *Sea Shepherd Legal*, 516 F. Supp. 3d at 1227 (internal quotation omitted).  Summary

5   judgment is appropriate when there is no genuine issue as to any material fact and the moving

6   party is entitled to judgment as a matter of law.  *Id.*; *see also* Fed. R. Civ. P. 56.  An issue is

7   "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-

8   moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is

9   "material" if the fact may affect the outcome of the case.  *See id.* at 248.  A district court reviews

10  questions under FOIA using a *de novo* standard of review.  5 U.S.C. § 552(a)(4)(B).

11         When the government's FOIA exemption claims are at issue in litigation, "the

12  government bears the burden of demonstrating that the asserted FOIA exemption applies to the

13  requested documents."  *Nat'l Parks Conservation Ass'n v. Navy*, No. C19-645 TSZ, 2020 WL

14  6820821, at *3 (W.D. Wash. Nov. 20, 2020), *reconsideration denied*, No. C19-645 TSZ, 2021

15  WL 1192443 (W.D. Wash. Mar. 30, 2021).  Agencies may meet this litigation burden by

16  submitting declarations or affidavits detailing the basis of claimed exemptions, or through the

17  production of a *Vaughn* index, or a combination of the two.  *See Sea Shepherd Legal*, 516 F.

18  Supp. 3d at 1228.  "While there is no 'set formula' for a *Vaughn* index . . . agencies should

19  'disclose as much information as possible' without thwarting the purpose of the stated

20  exemption."  *Id.* (internal citation omitted).  "[A]n agency's justification for invoking an

21  exemption is sufficient if it 'appears 'logical' or 'plausible,'' and "[u]nless the affidavits or

22  declaration are deficient, the Court need not conduct further inquiry into their veracity."  *Nat'l*

23  *Parks Conservation Ass'n*, 2020 WL 6820821, at *3 (internal citation omitted).  "The Court must

24  respect the expertise of an agency in this regard and should not overstep the proper limits of the

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 judicial role in FOIA review." *Id*. (internal quotation omitted).[3]

## III.   ARGUMENT

### A.  State conducted a reasonable search under FOIA.

As set forth in the Kootz Declaration, State executed a reasonable search and summary judgment is warranted.  On a motion for summary judgment, "[w]hen considering the adequacy of a records search, the agency has the burden to show that it has 'conducted a search reasonably calculated to uncover all relevant documents.'"  *Albers v. FBI*, 2017 WL 736042, at *3 (W.D. Wash. Feb. 24, 2017) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (citation omitted)).  In making this determination, "Courts do not focus on 'whether there might exist any other documents possibly responsive to the [FOIA] request, but rather whether the *search* for those documents was *adequate*... [which] is judged by a standard of reasonableness[.]'" *Id.*

The reasonableness of the search is judged by the *process*, and not the fruits of the search. *See Zaldivar v. United States Dep't of Veterans Affairs*, 2016 WL 4429657, at *3 (D. Ariz. Aug. 22, 2016), *aff'd*, 695 F. App'x 319 (9th Cir. 2017) ("In general, the sufficiency of a search is determined by the appropriateness of the methods used to carry it out, not by the fruits of the search.") (internal quotation omitted).  "[T]here is no requirement that an agency search every record system . . . or that a search be perfect . . . [but] the search must be conducted in good faith using methods that are likely to produce the information requested if it exists."  *Rodriguez v. McLeod*, 2008 WL 5330802, at *2 (E.D. Cal. Dec. 18, 2008) (internal quotation omitted). Agency declarations describing the search process are entitled to "a presumption of good faith."

---

[3] If a Court concludes that it needs more information than an agency's declarations or *Vaughn* Index provides, the Court may direct an agency to supplement its *Vaughn* Index or provide an additional declaration.  *See Nat'l Parks Conservation Ass'n*, 2020 WL 6820821, at *9.  Should this Court require more information in this case, Defendants respectfully request leave to provide it.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   *Withey v. FBI*, No. 18-cv-1635-JCC, 2020 WL 885974, at *2 (W.D. Wash. Feb. 24, 2020).

2   Declarations are found sufficient where they "provide[] detail as to the actual search [including]

3   file[s] reviewed, locations searched, and manner and procedure for selecting and searching files."

4   *Rodriguez*, 2008 WL 5330802, at *5.  Once an agency has met its burden, a plaintiff can only

5   avoid summary judgment if it comes forth with countervailing evidence rebutting the agency's

6   declaration concerning its search process.  *See Nat'l Pub. Radio v. United States Cent.*

7   *Command*, 2024 WL 3066048, at *1 (9th Cir. June 20, 2024); *Ford v. DOJ*, 2008 WL 2248267,

8   at *4 (D.D.C. May 29, 2008).   Neither general criticism that the search could have been better

9   nor "[m]ere speculation as to the existence of records not located as a result of the agency's

10  search . . . [will] undermine the adequacy of the search."  *Ford*, 2008 WL 2248267, at *4.

11          State's search process was reasonably calculated to uncover all relevant documents for

12  FOIA Requests F-2023-00026 and F-2023-07562.  *See* Kootz Decl. ¶¶ 14-28, 58.  The Kootz

13  declaration describes a well-considered, targeted, and comprehensive search process.  *See id*.

14  First, the requests were broadly analyzed by IPS to consider, agency-wide, what components

15  would be reasonably likely to maintain relevant records.  *Id*. ¶¶ 14-16.  Based upon its

16  knowledge and familiarity with the agency's record systems, IPS identified CA/VO, DS, and the

17  U.S. Embassy in Santo Domingo.  *Id*.  Next, those three State Department components were

18  tasked with undertaking searches within their own offices, based on their knowledge and

19  expertise of how files and records are organized and used by their component.  *Id*. ¶¶ 17-28.

20          For Request F-2023-00026, it was determined that the CCD database within CA/VO

21  would be the location where all relevant documents would be located.  The CCD database is

22  itself a collection of databases broadly encompassing a variety of records pertaining to visas and

23  visa applications from around the world.  *See* Kootz Decl. ¶¶ 18-19 n.2-5.  Other components

24  determined they were not likely to have records pertaining to Request F-2023-00026 because all

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

material related to a visa application would be maintained in the CCD.  *Id.* ¶¶ 19, 23.  Within the CCD, State used Mr. Cury's name and date of birth to identify any records pertaining to him.  *Id.* ¶ 19.

For Request F-2023-07562, all three components undertook searches based on a consideration of the FOIA request and knowledge of how records are organized and stored within each component.  *See* Kootz Decl. ¶¶ 18-28.  CA/VO executed an initial and supplemental search of a shared drive and email accounts using variations of Mr. Cury's name, specifically, "David, Julio," "Julio Cury," "Julio Miguel Cury," and "Julio Miguel David," with the date range January 22, 1968 to July 25, 2023.  *Id.* ¶ 20.  DS conducted a search of paper and electronic RSO Santo Domingo files using multiple iterations of Mr. Cury's name, "Julio Miguel Cury David," without any date restriction.  *Id.* ¶¶ 23-24.  And the U.S. Embassy in Santo Domingo identified the Political/Economic Section of the Embassy as the only section reasonably likely to maintain responsive records.  *Id.* ¶ 26.  Searches of both unclassified and classified drives were made using variations of Mr. Cury's name and a date range of January 1, 2005 to July 1, 2023.  *Id.* ¶¶ 26-27.  State's declaration, which is entitled to a presumption of good faith, provides sufficient detail about State's search process, including what locations were searched, why they were selected, and how they were searched, to demonstrate that the search process was reasonable, which is what FOIA requires.  *See e.g.*, *Karantsalis v. DOJ*, 635 F.3d 497, 500 (11th Cir. 2011) ("affidavit from a government official concerning a government agency's search in response to a FOIA request is sufficient evidence to establish that the search was reasonably calculated to uncover all relevant documents provided that the affidavit is relatively detailed, nonconclusory, and submitted in good faith.") (internal quotation omitted); *Knight v. NASA*, 2006 WL 3780901, at *5 (E.D. Cal. Dec. 21, 2006) (FOIA search reasonable where agency relied on subject matter experts to identify locations for searching for documents).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

None of the issues regarding State's search process that "Plaintiffs believes are in need of Court resolution," *see* Dkt. 18, provide "countervailing evidence" necessary to defeat summary judgment. *See Hidalgo v. FBI*, No. 10-5219, 2010 WL 5110399, at *1 (D.C. Cir. Dec. 15, 2010); *Butler v. Nelson*, No. CV 96-48-M-CCL, 1997 WL 580331, at *3 (D. Mont. May 16, 1997) ("In the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain the scope and method of the agency's search suffice to demonstrate compliance under the FOIA.").

The putative issues identified by Plaintiffs fall into three camps. First, Plaintiffs take issue with the fact that State executed certain searches for Request F-2023-07562 that it did not also undertake for Request F-2023-00026. In particular, Plaintiffs assign fault to State's decision to only search the DS systems for Request F-2023-07562 and not Request F-2023-00026. This does not provide countervailing evidence of an unreasonable search. The reason different searches were run for each request was because the requests demanded different types of records. Request F-2023-00026 is limited to records "pertaining to the revocation of the visa previously held by Mr. Cury." *See* Kootz Decl. ¶ 17, Ex. 2. DS records systems were not searched for Request F-2023-00026 because a DS Division Team Lead determined "DS components were not reasonably likely to maintain records responsive to F-2023-00026 because . . . all material related to a visa application would be maintained in the CCD, not in a DS record system." *Id*. ¶ 23; *Knight*, 2006 WL 3780901, at *5 ("An agency may properly explain by declaration or affidavit that records are not apt to be found at other locations").

Second, Plaintiffs complain that variations of Mr. Cury's name were used during the search process and appear to contend that just "Cury" should have been used as a stand-alone search term. But a "FOIA [requester] cannot dictate the search terms for his or her FOIA request." *Bigwood v. DOD*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015). "Rather, a federal agency

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   has discretion in crafting a list of search terms that they believe[ ] to be reasonably tailored to

2   uncover documents responsive to the FOIA request."  *Id*. (internal quotation omitted).  Here, the

3   search terms were selected by individuals knowledgeable about how State's records are

4   maintained and organized.  *See* Kootz Decl. ¶¶ 17-27.  Plaintiffs have not shown that the selected

5   terms were unreasonable by, for example, demonstrating that the search term "Cury" would have

6   identified any additional responsive records or that the terms selected by State failed to uncover

7   particular responsive records.  This challenge therefore fails to show that State's search process

8   was unreasonable.

9   Third, Plaintiffs criticize State for purportedly not undertaking or describing

10   supplemental searches.  Initially, the Kootz Declaration does identify a supplemental search.  *See*

11   Kootz Decl. ¶¶ 12, 20.  But regardless, it is not clear how Plaintiffs' complaint about

12   supplemental searches shows that the search process was unreasonable.  For example, Plaintiffs

13   have not identified any documents or issue that would call for a particular supplemental search

14   that State was obliged to take.  In the absence of that, Plaintiffs' critique about supplemental

15   searching appears to be no more than speculation that another search was necessary to uncover

16   relevant documents.  Such speculation does not provide countervailing evidence of an

17   unreasonable search process because "mere speculation that as yet uncovered documents might

18   exist, does not undermine the determination that the agency conducted an adequate search for the

19   requested records."  *Zaldivar*, 2016 WL 4429657, at *3 (internal quotation omitted).

20   **B.  Defendants' withholdings pursuant to FOIA Exemptions 3, 5, and 7 are warranted.**

21   1.  <u>State properly withheld information under Exemption 3.</u>

22   State appropriately withheld information pursuant to FOIA Exemption 3 based on

23   Section 222(f) of the INA.  *See* Kootz Decl. ¶¶ 30-34, Ex. 1.  FOIA Exemption 3 exempts from

24   disclosure information that is protected by a separate statute, provided that the statute, "(A)(i)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A)(i)-(ii).  "To determine whether the Government has properly invoked Exemption 3, the Court must: (1) determine whether the statute qualifies as an exempting statute under Exemption 3; and (2) determine whether the requested material falls within the scope of the exempting statute."  *Nikaj v. United States Dep't of State*, No. C18-0496-JCC, 2019 WL 2602520, at *2 (W.D. Wash. June 25, 2019) (citing *CIA v. Sims*, 471 U.S. 159, 167-68 (1985)).  Section 222(f) provides in relevant part:

**(f) Confidential nature of records**

The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States. . . .

INA § 222(f) (codified at 8 U.S.C. § 1202(f)).

State satisfies both requirements for withholding the materials identified in its *Vaughn* index under Exemption 3.  First, courts have long recognized that Section 222(f) of the INA qualifies as an exempting statute.  *See e.g.*, *Nikaj*, 2019 WL 2602520, at *2 ("8 U.S.C. § 1202(f) qualifies as an exempting statute under Exemption 3") (citing *Wiener v. FBI*, 943 F.2d 972, 982 (9th Cir. 1991)); *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741 (D.C. Cir. 1983) ("Every court which has considered the issue has concluded that section 222(f) qualifies as an Exemption 3 statute.").

Second, the Kootz Declaration and *Vaughn* index explain how the withheld information falls under the scope of the exemption statute, INA § 222(f).  *See* Kootz Decl. ¶¶ 30-34, Ex. 1.  Kootz identifies that "the Department withheld 58 records in full and 31 records in part under Exemption 3 pursuant to INA Section 222(f)," and attests that "[t]he withheld information in

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

those records, including information consolidated from various non-public interagency systems, was generated by the Bureau of Consular Affairs' CCD and pertains directly to the issuance or refusal of a visa." *Id*. ¶ 34.  State's *Vaughn* index provides further details about the documents at issue, and explains that they "concern[] adjudication of visa applications for Julio Miguel Cury David, including consular comments, application data, and other pertinent data," or "pertain directly to the issuance or refusal of a visa to enter the United States."

Such materials fall under the scope of INA § 222(f), which applies to materials "*pertaining* to the issuance or refusal of visas or permits to enter the United States."  8 U.S.C. § 1202(f) (emphasis added).  Thus, it protects not only "information supplied by the visa applicant," but also "information revealing the thought-processes of those who rule on the application," and "that would expose the inner workings of the State Department."  *Medina-Hincapie*, 700 F.2d at 744.  And INA § 222(f) encompasses material relating to visa revocations as "revocation of a visa pertains to the issuance of a visa because they are so closely related – namely, a revocation constitutes a nullification of that issuance."  *Spadaro v. CBP*, 978 F.3d 34, 46 (2d Cir. 2020); *see also Soto v. U.S. Dep't of State*, No. CV 14-604 (RDM), 2016 WL 3390667, at *4 (D.D.C. June 17, 2016) ("the issuance and revocation of visas represent two sides of the same coin").

In their September 2024 identified challenges, Plaintiffs fail to explain why or on what basis they contend INA § 222(f) does not apply to the withheld materials.  They do not identify any specific withheld record they claim falls outside its scope, but rather generally claim to

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    challenge all withholdings based on INA § 222(f).  For the reasons explained above, Plaintiffs'

2    general assertion fails, and summary judgement is warranted for State.[4]

3         2.   <u>State properly withheld deliberative process materials under Exemption 5.</u>

4         State appropriately withheld information protected by the deliberative process privilege

5    pursuant to FOIA Exemption 5.  *See* Kootz Decl. ¶¶ 35-44, Ex. 1.  FOIA Exemption 5 exempts

6    from disclosure "inter-agency or intra-agency memorandums or letters that would not be

7    available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §

8    552(b)(5).  It "incorporates the privileges available to Government agencies in civil litigation,

9    such as the deliberative process privilege."  *USFWS v. Sierra Club, Inc.*, 592 U.S. 261, 263

10   (2021).[5]

11        "The purpose of the deliberative-process privilege is to avoid injury to the quality of

12   agency decisions by encouraging frank discussion of legal or policy matters without fear of

13   public dissemination."  *Nat'l Parks Conservation Ass'n*, 2020 WL 6820821, at *9 (internal

14   quotation omitted).  It "allow[s] agencies freely to explore possibilities, engage in internal

15   debates, or play devil's advocate without fear of public scrutiny."  *Lahr v. NTSB*, 569 F.3d at

16   964, 979 (9th Cir. 2009) (internal quotation omitted); *Sierra Club*, 592 U.S. at 267 (the

17

18   _____

19   [4] In their FOIA requests, which were necessarily submitted before any documents were identified, Plaintiffs
     preemptively cited to *Guerra v. United States*, No. 09-cv-1027-RSM, 2010 WL 5211613 (W.D. Wash. Dec. 15,

20   2010) and *Mantilla v. U.S. Dep't of State*, 2012 WL 4372239 (S.D. Fla. Sept. 24, 2012) for the broad proposition
     that Section 222(f) does not apply to visa revocations.  *See* Kootz Decl., Exs. 2-3.  To the extent that remains
     Plaintiffs' argument (which was not articulated in the September 2024 challenges), neither case is binding on this

21   Court.  Moreover, *Guerra* is not as broad as Plaintiffs first suggested.  *Guerra* did not conclude that *all* visa
     revocation materials fall outside the scope of INA § 222(f), nor has Plaintiff explained its relevance to the facts of
     this case or for any specific document that has been withheld here.  Further, *Mantilla* relies on a district court

22   opinion that the Second Circuit abrogated in *Spadaro*. 978 F.3d at 46-48.  Indeed, a more recent case from the
     Southern District of Florida declined to follow *Mantilla*, noting that *Spadaro* and the majority of federal district

23   courts have reached the opposite conclusion.  *See Jimenez v. DHS*, 2022 WL 1642460, at *8 (S.D. Fla. Feb. 24,
     2022), *report and recommendation adopted*, 2022 WL 16700354 (S.D. Fla. Nov. 3, 2022).

24   [5] Exemption 5 also incorporates other privileges, however, only the deliberative process privilege is at issue here.

1   deliberative process privilege "protect[s] agencies from being forced to operate in a fishbowl."

2   (internal quotation omitted)).  Accordingly, "[t]he privilege focuses on the inhibiting effect of

3   forcing agencies to disclose pre-decisional communications, which might reduce the candor of

4   agency personnel and produce ill-informed and poorer results."  *Nat'l Parks Conservation Ass'n*,

5   2020 WL 6820821, at \*9; *Sierra Club*, 592 U.S. at 267 ("To encourage candor, which improves

6   agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of

7   disclosure.").

8        To be exempt from FOIA and "fall within the bounds of the deliberative-process

9   privilege, the documents at issue must be both (i) pre-decisional in nature, and (ii) part of the

10  agency's deliberative process."  *Nat'l Parks Conservation Ass'n*, 2020 WL 6820821, at \*10.

11  "Documents are 'predecisional' if they were generated before the agency's final decision on the

12  matter, and they are 'deliberative' if they were prepared to help the agency formulate its

13  position."  *Sierra Club*, 592 U.S. at 268.  "A predecisional document is a part of the deliberative

14  process, if the disclosure of the materials would expose an agency's decisionmaking process in

15  such a way as to discourage candid discussion within the agency and thereby undermine the

16  agency's ability to perform its functions."  *Lahr*, 569 F.3d at 979-80 (internal quotation omitted).

17       Here, the Kootz Declaration and *Vaughn* index identify that State withheld information

18  from 23 documents under the deliberative process privilege.  *See* Kootz Decl. ¶¶ 38-41, Ex. 1.

19  The *Vaughn* index details the specific records at issue and the Kootz Declaration explains that

20  from these records, State withheld information reflecting "employee deliberations regarding Mr.

21  Cury's eligibility for a non-immigrant visa."  *Id*.  The Kootz Declaration further explains that the

22  withheld information is predecisional because it "predates the Department's final decisions on

23  Mr. Cury's visa applications."  *Id*. ¶ 42.  It is deliberative because it "consists of deliberations" of

24  agency employees "regarding Mr. Cury's eligibility for a non-immigrant visa" and "reflects

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

recommendations and advice provided to the adjudicator regarding Mr. Cury's eligibility for the visas for which he applied." *Id*. ¶¶ 39-42.  The Kootz Declaration further attests that "[d]isclosure of this information would foreseeably harm the Department's deliberative process by creating a substantial chilling effect on internal deliberations concerning the adjudication of visa applications." *Id*. ¶ 43.  It explains that disclosure would hinder "free-flowing and candid discussions about visa applicants' eligibility and, in turn, the visa adjudicators would not receive a full picture of the considerations that are relevant to the final visa adjudication." *Id*.  This information is therefore exempt from release under Exemption 5 under the deliberative process privilege.  *See Jimenez*, 2022 WL 1642460, at *8-9 (information reflecting communications and advice of State Department officials and attorneys regarding visa applications protected by deliberative process privilege).

In their September 2024 identified challenges, Plaintiffs fail to explain why or on what basis they contend Exemption 5 does not apply to the withheld materials.  Plaintiffs were provided a draft *Vaughn* index months earlier, but Plaintiffs have not explained if they contend that the withheld materials are not pre-decisional, or not deliberative, or if there is some other reason Plaintiffs contend that they do not qualify for protection under Exemption 5.  For the reasons explained above, however, Plaintiffs' general assertion fails, and summary judgement is warranted for State for its withholdings under Exemption 5.

3.  Exemption 7(E)

Both CBP and State have justified their withholdings under FOIA Exemption 7(E) for the reasons explained in the Howard and Kootz Declarations.  *See* Howard Decl. ¶¶ 6-8; Kootz Decl. ¶¶ 45-56.  Under Exemption 7(E) an agency may withhold "records or information compiled for law enforcement purposes" if they "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "The purpose of Exemption 7(E) is to

prevent publication of information that would train potential violators to evade the law or instruct

them how to break the law."  *Ctr. For Biological Diversity v. U.S. Army Corps of Engineers*, 405

F. Supp. 3d 127, 145 (D.D.C. 2019) (internal quotation omitted).

"Exemption 7(E) 'sets a relatively low bar for the agency to justify withholding.'  It 'only

requires that the agency demonstrate logically how the release of the requested information

might create a risk of circumvention of the law.'"  *KXTV, LLC v. United States Citizenship &*

*Immigration Servs.*, 2020 WL 1082779, at *7 (E.D. Cal. Mar. 6, 2020) (quoting *Blackwell v.*

*F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2010)).  "[T]he Government must show that the technique or

procedure at issue is not well known to the public, and must describe the general nature of the

technique or procedure at issue, although it need not provide specific details." *Nikaj*, 2019 WL

2602520, at *3 (internal quotation omitted).

4.  <u>CBP withheld information regarding law enforcement techniques and investigative</u>
<u>impressions.</u>

The parties have been able to agree that a significant number of CBP's withholdings are

proper and CBP has released additional information to Plaintiffs that it originally redacted.

Plaintiffs only challenge withholdings under Exemption 7(E) and that information can be

categorized in two general types: codes and comments.  CBP addresses the nature of the

redactions below and explains why they were properly withheld under Exemption 7(E).

*i.  CBP redacted internal non-public codes that is uses in its law enforcement*
*databases.*

All travelers who arrive at a port of entry are screened by CBP; some travelers may be

referred for secondary screening.  These referrals may be random, or they may be based on

specific concerns or information.  The redacted codes relate to reasons for the referral and to

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    CBP's law enforcement information it had compiled regarding Plaintiff.  CBP redacted system

2    codes that were mostly listed in the "Referral Information," "Referral Reason," "Miscellaneous

3    Info," and "Admissibility" section (the last of which is found exclusively in the final 10 pages of

4    release).  Most of the time, the field name (such as Referral Reason) was left unredacted, but

5    CBP fully redacted some field names.  CBP makes these redactions in every traveler record.  The

6    codes are non-public information that relate to its procedures, practices, guidelines, and other

7    similar information that directly informs CBP's law enforcement mission to secure the border of

8    the United States.  Howard Decl., ¶ 8.

9         CBP also redacted labels and dates where that information would further reveal non-

10   public, sensitive information describing CBP's inspection activities and methods.  Howard Decl.,

11   ¶¶ 8-9.  For example, "start date" and "end date" of particular CBP investigation efforts were

12   redacted so at to conceal the specifics of when CBP launched certain investigation efforts in

13   order to prevent would-be bad actors for devising a means to avoid detection during specific

14   timeframes.

15        *ii.   CBP redacted comments regarding its law enforcement techniques or investigatory*
          *impressions.*

16

17        The next category of redactions relates mostly to comments made by customs officers

18   that either relay their investigation impressions or elaborate on a code that was returned.  These

19   comments are generally found in two fields: (1) "Referral Comments" and (2) "Remarks."

20   Referral Comments include notes listed by the customs agent and Remarks are generally a short

21   summary of the encounter with Plaintiff at the Port of Entry.[6]  Most of the Remarks are not

22   redacted because much of the information simply repeats what Plaintiff conveyed to the agent.

23   _____

24   [6] The format of the records changes over time so that periodically comments are also contained (and redacted) in the
     Referral Reasons category, discussed above.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT          UNITED STATES ATTORNEY
[Case No. 2:23-cv-00499-JLR] – 20                700 Stewart Street, Suite 5220
                                                 Seattle, Washington 98101
                                                 (206) 553-7970

1    Thus, any public information has been released.  Only the non-public, sensitive information that

2    relates CBP's law enforcement information or impressions has been held back.

3            iii.    *CBP properly withheld information pursuant to Exemption 7(E).*

4            To release either the codes—or even the lack of a specific code—or the comments would

5    reveal the types of information that trigger a secondary inspection or the concerns that CBP finds

6    relevant to its inspection processes.  Even if an individual's records do not contain specific law

7    enforcement results or information, the information about what databases are queried, the type of

8    information that is checked, or the types of results that are concerned all involve law

9    enforcement information and are deserving of protection.  Howard Decl., ¶ 8.

10           Certain bad actors could devise means to avoid heightened scrutiny based on this

11   information.  *See Anguiano v. ICE*, 2018 WL 5923451, at *13 (N.D. Cal. Nov. 13, 2018)

12   (finding that ICE properly withheld "serial numbers, law enforcement codes, law enforcement

13   database checks, operation names, background checks, state identification numbers, and FBI

14   numbers" pursuant to Exemption 7(E)); *Ctr. for Biological Diversity*, 405 F. Supp. 3d at 146

15   ("Information relating to infrastructure used to prevent or detect illegal entry of items and people

16   is information related to law enforcement techniques, procedures, or guidelines."); *KXTV, LLC*,

17   2020 WL 1082779, at *8 ("These documents are withheld to prevent potential violators from

18   evading and exploiting United States immigration laws.").

19           As the Howard Declaration demonstrates, the redacted information clears the

20   exemption's low threshold because the withheld information was compiled for law enforcement

21   purposes and public dissemination of the techniques CBP employs and the information it

22   considers could jeopardize CBP's law enforcement mission.  "Law enforcement in Exemption 7

23   refers to the act of enforcing the law, both civil and criminal."  *Pub. Emps. for Env't Resp. v.*

24   *U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   2014).  The information here falls squarely within CBP's mandate to enforce the law at the

2   nation's borders.  Howard Decl., ¶¶ 7-8.  And it would allow, even if disclosed in a piecemeal

3   fashion, an individual to access and understand CBP's "methods, processes, and rationale for

4   conducting inspectional activities."  Howard Decl., ¶ 8.  "[T]he generally accurate assumption

5   that federal agencies act within their legislated purposes implies that an agency whose principal

6   mission is criminal law enforcement will more often than not satisfy the Exemption 7 threshold

7   criterion. Thus, a court can accept less exacting proof from such an agency that the purpose

8   underlying disputed documents is law enforcement."  *Pratt v. Webster*, 673 F.2d 408, 418 (D.C.

9   Cir. 1982); *see Long v. ICE*, 149 F. Supp. 3d 39, 48–49 (D.D.C. 2015).

10          Similarly, CPB's stated concerns or investigative comments about an individual would

11   similarly reveal the type of information it considers when it determines whether that person

12   should be admitted.  *Curran v. DOJ*, 813 F.2d 473, 475 (1st Cir. 1987) (holding that

13   investigatory records of law enforcement agencies are "inherently" compiled for law

14   enforcement purposes); *see also Hamdan v. DOJ*, 797 F.3d 759, 777 (9th Cir. 2015); *McCash v.*

15   *CIA*, 2017 WL 1047022 (N.D. Cal. Mar. 20, 2017) (protecting a known technique because

16   although the technique was publicly known, "the public does not know how [the technique]

17   works or how it is used in investigations").  Because the information at issue was compiled for

18   law enforcement purposes; would disclose law enforcement techniques; and those techniques

19   (and the specific means of how those techniques were applied) are not publicly known, CBP

20   properly withheld the information pursuant to Exemption 7(E).  *See ACLU v. DOJ*, 418 F. Supp.

21   3d 466, 478 (N.D. Cal. 2019) (discussing Exemption 7(E) generally); *Am. Fed'n of Gov't Emps.*

22   *Loc. 527 v. USCIS*, 2024 WL 1179971, at *9 (S.D. Fla. Feb. 14, 2024), report and

23   recommendation adopted, 2024 WL 1174332 (S.D. Fla. Mar. 18, 2024) (finding that information

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    about DHS databases, codes, and information it compiles—including systems used by CBP—

2    were properly withheld under Exemption 7(E)).

3        5.   Underline State properly withheld materials under Exemption 7(E).

4        The information State withheld under FOIA Exemption 7(E) originated from non-public

5    law enforcement databases that are accessible via the CCD.  Their disclosure would reveal law

6    enforcement techniques used by State in analyzing visa eligibility and risk aiding circumvention

7    of law.  *See* Kootz Decl. ¶¶ 45-56, Ex. 1.  The non-public law enforcement databases from which

8    State's records concerning Mr. Cury's visa application were obtained "serve as repositories for

9    collected national security and criminal investigative information," and "allow CA/VO to query

10   information and develop investigative leads from a variety of source data using state-of-the-art

11   analytical tools."  *Id.* ¶ 53.  Access to the databases is restricted and CA/VO officials only have

12   access to them in accordance with data-sharing agreements that restrict disclosure of the

13   information contained therein.  *Id.*  State's records from these law enforcement databases satisfy

14   the threshold requirement that the records were "compiled for law enforcement purposes." 5

15   U.S.C. § 552(b)(7); *see Nikaj*, 2019 WL 2602520, at *3 (records compiled to determine "whether

16   visa applications should be approved or denied," fall within INA enforcement authority and have

17   the "salient characteristics of law enforcement contemplated") (internal quotation omitted).

18       The Kootz Declaration explains that disclosure of these records would reveal non-public

19   information about law enforcement techniques used to assess an applicant's visa eligibility.  *See*

20   Kootz Decl. ¶¶ 54-56, Ex. 1.  In particular, the CCD contains information about the "name

21   check" and other, similar law enforcement techniques.  "While the public may generally be

22   aware that 'name checks' are conducted, the withheld information consists of sensitive details

23   about such name check databases or procedures that are not publicly known."  *Mobley v. CIA*,

24   924 F. Supp. 2d 24, 63 (D.D.C. 2013) (quotation omitted).  Armed with this information, an

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   individual could try to circumvent or manipulate State's visa assessments and defraud a visa

2   adjudicator, thereby jeopardizing CA/VO's role in enforcing U.S. immigration laws and

3   regulations.  *See Kootz Decl.* ¶¶ 54-56.  Accordingly, the withheld information obtained from the

4   CCD database reflecting techniques used to adjudicate visa eligibility and enforce immigration

5   laws is exempt from release under FOIA Exemption 7(E).  *See Nikaj*, 2019 WL 2602520, at *3

6   ("The steps taken to assess visa eligibility are not well-known to the public," and "[d]isclosure of

7   the Government's visa application processes could lead to circumvention of the law because it

8   could allow potential applicants to cover up damaging information.").

9          In their September 2024 identified challenges, Plaintiffs purport to challenge all of

10  State's withholdings under FOIA Exemption 7(E) but the only substantive criticism Plaintiffs

11  described was that State has not provided declarations from other agencies that contribute to the

12  law enforcement databases that are accessible via the CCD.  Plaintiffs misunderstand the nature

13  of records at issue and the basis of State's assertion of the exemption.  The records at issue are

14  State's records and State is asserting the exemption on its own behalf, not on behalf of another

15  agency.  Plaintiffs' argument fails to show that FOIA Exemption 7(E) does not apply to the

16  withheld materials, and for the reasons explained above, summary judgment is warranted for

17  State.

18          6.  <u>CBP did not waive TECS ID by accidentally revealing it in on document.</u>

19          The final issue relates to the "TECS ID" field.  TECS is the primary system that customs

20  officers use at the port of entry to screen individuals seeking admission to the United States.

21  ([https://www.dhs.gov/publication/tecs-system-cbp-primary-and-secondary-processing-tecs-](https://www.dhs.gov/publication/tecs-system-cbp-primary-and-secondary-processing-tecs-)

22  [national-sar-initiative](https://www.dhs.gov/publication/tecs-system-cbp-primary-and-secondary-processing-tecs-national-sar-initiative)).  Individuals are assigned ID numbers within the system, and courts have

23  already held that such information is properly withheld under Exemption 7(E).  *Miller v. DOJ*,

24  872 F.Supp.2d 12, 28–29 (D.D.C. 2012) (withholding TECS numbers under FOIA Exemption

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | 7(E)).

2 | During meet and confer, Plaintiffs' counsel confirmed he was not seeking the release of

3 | fields labeled "TECS ID."  The government also asked counsel to confirm he would not dispute

4 | other redactions of TECS ID even where the field name was not specifically identified as such.[7]

5 | Surprisingly, counsel changed his position and argued that because CBP inadvertently produced

6 | the TECS ID number in one document, it waived it throughout the production.

7 | But that is not how the Ninth Circuit interprets a FOIA disclosure.  "Voluntary disclosure

8 | of documents, either in whole or in part, to third parties has sometimes been held to waive FOIA

9 | exemptions for those documents… the circuits that have addressed this issue generally have

10 | found that the release of certain documents waives FOIA exemptions *only for those documents*

11 | *released*."  *Mobil Oil Corp. v. EPA*, 879 F.2d 698, 701 (9th Cir. 1989) (emphasis in original;

12 | citations omitted); *Pac. Coast Shellfish Growers Ass'n v. United States Army Corps of*

13 | *Engineers*, No. 16-cv-193-RAJ, 2016 WL 3000259, at *8 (W.D. Wash. May 25, 2016) ("Waiver

14 | of a FOIA exemption as to one document does not extend to other documents.").  Here, the

15 | disclosure was inadvertent rather than voluntary, but even construing CBP's release as voluntary

16 | does not affect CBP's ability to withhold that same information in *other documents*.  Further, an

17 | individual's TECS ID is not static and may change over time, even throughout this one release,

18 | which covers an extensive period of time.  Thus, CBP's release of Plaintiff's TECS ID is

19 | controlling for that document alone and cannot affect the validity of the withholdings of TECS

20 | ID in the remaining pages of CBP's production.  Other than the one mistaken production, all

21 | TECS ID numbers were properly withheld pursuant to Exemption 7(E) and the Court should

22 | refuse Plaintiff's request to find a waiver of that information as to all documents.

23 |

24 |

[7] In particular, the redaction next to Plaintiff's name at the top of each document was also the TECS ID.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   **7.  The Agencies' Segregability Determinations are Sound**

2   Finally, Plaintiffs appear to challenge all of State and CBP's segregability

3   determinations, but the agencies' declarations and accompanying *Vaughn* indices demonstrate

4   that those determinations are sound.  The declarations and *Vaughn* indices "identify the withheld

5   documents individually; provide[s] an individualized explanation of the material being withheld;

6   and explicitly state[s] that the withheld portions are so inextricably intertwined with the non-

7   exemption portion that segregation is not possible or that [n]o reasonably segregable, nonexempt

8   portions were withheld."  *Sea Shepherd Legal*, 516 F. Supp. 3d at 1241-42 (internal quotations

9   and citation omitted).  This is sufficient to support a segregability determination and both State's

10  and CBP's declarations are entitled to a presumption of good faith.  *See id*.

11                              **IV.    CONCLUSION**

12  State undertook a well-reasoned, comprehensive search that was reasonably calculated to

13  identify all responsive records.  And both State and CBP appropriately withheld information

14  pursuant to the statutory exemptions.  For the reasons stated above, the Court should grant

15  Defendants' motion for summary judgment and dismiss all claims with prejudice.

16

17  //

18

19  //

20

21  //

22

23  //

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[Case No. 2:23-cv-00499-JLR] – 26

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     DATED this 11th day of October 2024.

2                                    Respectfully submitted,

3                                    TESSA M. GORMAN
                                     United States Attorney

4                                    *s/ Nickolas Bohl*

5                                    NICKOLAS BOHL, WSBA No. 48978

6                                    *s/ Katie D. Fairchild*

      KATIE D. FAIRCHILD, WSBA No. 47712
7     Assistant United States Attorneys
      United States Attorney's Office
8     Western District of Washington
      700 Stewart Street, Suite 5220
9     Seattle, Washington 98101-1271
      Phone: 206-553-7970
10    Fax:     206-553-4073
      Email:  nickolas.bohl@usdoj.gov
11              katie.fairchild@usdoj.gov

12                                   *Attorneys for Defendants*

13                                   I certify that this memorandum contains 8,038
                                     words, in compliance with the Local Rules.

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970