1

The Honorable James L. Robart

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10
JULIO CURY and TAKAO YAMADA,

Case No. 2:23-cv-00499-JLR

Plaintiffs,

11

12
v.

DECLARATION OF TIMOTHY J. KOOTZ

13
DEPARTMENT OF STATE and
DEPARTMENT OF HOMELAND
SECURITY,

14

15
Defendants.

16
**DECLARATION OF TIMOTHY J. KOOTZ**

17
Pursuant to 28 U.S.C. § 1746, I, Timothy J. Kootz, declare and state as follows:

18
1.      I am Deputy Assistant Secretary for Global Information Services ("GIS") within

19
the Bureau of Administration of the United States Department of State (the "Department" or

20
"State"). I am the Department official immediately responsible for responding to requests for

21
records under the Freedom of Information Act ("FOIA"), 5. U.S.C. § 552; the Privacy Act of

22
1974, 5 U.S.C. § 552a; and other applicable records access provisions. Prior to serving in this

23
capacity, I was the Director of the Office of Information Programs and Services ("IPS") within

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 1

1  GIS, a position in which I served since March 26, 2023.  I also served as the Agency Records

2  Officer and the Chief of the Records and Archives Management Division of IPS from October

3  2016 to March 2023.

4       2.      I am familiar with the efforts of Department personnel to process the FOIA

5  request that is the subject of this litigation, and I am in charge of coordinating the agency's

6  processing efforts with respect to that request.  I make the following statements based upon my

7  personal knowledge, which in turn is based upon information furnished to me in the course of

8  my official duties.

9       3.      The core responsibilities of IPS include: (1) responding to records access requests

10 made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification

11 review requirements of the Executive Order governing classified national security information),

12 by Members of Congress, by other government agencies, and those made pursuant to judicial

13 process such as subpoenas, court orders, and discovery requests; (2) records management; (3)

14 national security classification management and declassification review; (4) corporate records

15 archives management; (5) research; (6) operation and management of the Department's library;

16 and (7) technology applications that support these activities.

17      4.      This declaration explains (1) the Department's release of documents to Plaintiffs

18 under the FOIA, (2) the Department's search for and review of records responsive to the FOIA

19 requests at issue in this litigation, and (3) the FOIA exemptions applied in processing the

20 responsive records produced to Plaintiffs.  I make the following statements based upon my

21 personal knowledge, which in turn is based upon information furnished to me in the course of my

22 official duties.

23

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 2

1    5.    In accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820

2  (D.C. Cir. 1973), this declaration and attached *Vaughn* index provide justifications for withholding

3  information pursuant to FOIA Exemptions 3, 5, and 7(E).  While the Department also applied

4  FOIA Exemptions 6 and 7(C) to certain records produced to Plaintiffs, the Department understands

5  that Plaintiffs do not challenge those withholdings.  A true and complete copy of the *Vaughn* index

6  is attached to this declaration as Exhibit 1.

7  **I.    ADMINISTRATIVE PROCESSING OF PLAINTIFFS' FOIA REQUESTS**

8    6.    Counsel for Plaintiffs submitted a FOIA request to the Department by email dated

9  October 1, 2022, seeking "copies of all records, including emails, pertaining to the revocation of

10  the visa previously held by Mr. Cury."  A true and complete copy of this FOIA request is

11  attached as Exhibit 2.

12    7.    On October 3, 2022, IPS acknowledged receipt of the FOIA request via email and

13  assigned it Case Control Number F-2023-00026.

14    8.    By letter dated January 5, 2023, the Department's Office of Domestic Operations,

15  Directorate for Visa Services within the Bureau of Consular Affairs informed counsel for

16  Plaintiffs that it had located 88 records responsive to Request F-2023-00026.[1]  The Department

17  released 1 document in full, released 30 documents in part, and withheld 58 documents in full.

18    9.    Counsel for Plaintiffs submitted a second FOIA request to the Department by

19  email dated October 1, 2022, seeking "an electronic copy of all records, including emails, in the

20  U.S. Embassy in Santo Domingo, including but not limited to the Regional Security Office,

21  including any permutations of Mr. Cury's name (including permutations which lack 'David')."

22  A true and complete copy of this FOIA request is attached as Exhibit 3.

23

24  [1] The Department's January 5, 2023, letter had a typographical error: it stated that the Department located 88 records whereas it should have stated that 89 records were located, as described in this declaration.

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 3

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    10.    On May 9, 2023, IPS acknowledged receipt of the second FOIA request via email

2    and assigned it Case Control Number F-2023-07562.

3    11.    By letter dated October 13, 2023, sent via email, IPS informed Plaintiffs' counsel

4    that a search of Department records had resulted in the retrieval of three responsive records.  The

5    Department released two documents in full and one document in part.

6    12.    By letter dated June 25, 2024, sent via email, IPS informed Plaintiffs that—as a

7    result of a supplemental search, which is described further in Part II below—it had located an

8    additional record responsive to Plaintiffs' FOIA request, which the Department released in part.

9    13.    By letter dated August 5, 2024, sent via email, IPS informed Plaintiffs that—as a

10    result of further review during the parties' settlement negotiations—it had determined that

11    additional information in one document (A-00000660476) could be released.

12    ## II.    THE SEARCH PROCESS

13    14.    When the Department receives a FOIA request, IPS evaluates the request to

14    determine which offices, overseas posts, or other records systems within the Department may

15    reasonably be expected to contain the records requested.  This determination is based on the

16    description of the records requested and requires a familiarity with the holdings of the

17    Department's records systems, applicable records disposition schedules, and the substantive and

18    functional mandates of numerous Department offices and Foreign Service posts and missions.

19    15.    Each office within the Department, as well as each Foreign Service post and

20    mission, maintains files concerning foreign policy and other functional matters related to the

21    daily operations of that office, post, or mission.  These files consist generally of working copies

22    of documents, information copies of documents maintained in the Central Foreign Policy

23    Records collection, and other documents prepared by or furnished to the office in connection

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 4

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  with the performance of its official duties, as well as electronic copies of documents and e-mail
2  messages.

3      16.     Based on its knowledge of the responsibilities of the various Department
4  components, together with an evaluation of the subject matter of Plaintiffs' requests, IPS
5  determined that the Department components reasonably likely to maintain all responsive records
6  for FOIA Requests F-2023-00026 and F-2023-07562 were the Directorate of Visa Services in the
7  Bureau of Consular Affairs, the Bureau of Diplomatic Security, and the U.S. Embassy in Santo
8  Domingo, Dominican Republic. IPS concluded that no other components or records systems
9  were reasonably likely to maintain documents responsive to Plaintiffs' requests. As described
10 below, the tasked components searched all files reasonably likely to contain responsive
11 documents and therefore the Department's search was reasonably calculated to uncover all
12 relevant documents for FOIA Requests F-2023-00026 and F-2023-07562.

13     17.     When conducting a search in response to a FOIA request, the Department relies
14 on the knowledge and expertise of the employees of each bureau/office/post to determine the
15 files and locations reasonably likely to house all responsive records and the best means of
16 locating such records, as these employees are in the best position to know how their files are
17 organized. Likewise, these employees are also in the best position to determine which search
18 terms would yield potentially responsive records because they are most knowledgeable about the
19 organization of the records systems in use. Here, FOIA Requests F-2023-00026 and F-2023-
20 07562 sought different types of records (the former sought visa revocation records and the latter
21 sought records from a U.S. embassy), so the Department conducted different searches for each
22 request.

23

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 5

1

**The Directorate of Visa Services, Bureau of Consular Affairs**

2    18.    The Directorate of Visa Services within the Bureau of Consular Affairs

3  ("CA/VO") manages all aspects of visa services for foreign nationals who wish to enter the

4  United States.  CA/VO interprets and applies immigration laws and regulations, and acts as a

5  point of contact for the public.  CA/VO also serves as a liaison between the Department of State

6  and its embassies and consulates abroad on visa matters.  CA/VO's primary responsibility is the

7  enforcement of U.S. immigration laws and regulations.  Records relating to visa applications,

8  among other matters, are generally maintained in a central electronic database called the

9  Consular Consolidated Database ("CCD").[2]  CA/VO maintains the following databases within

10  the CCD: the Consular Lookout and Support System ("CLASS"),[3] the Non-Immigrant Visa

11  ("NIV") system,[4] and the Immigrant Visa Overseas ("IVO") system.[5]

12    19.    For Request F-2023-00026, a Consular Officer for the Office of Domestic

13  Operations within CA/VO, who was knowledgeable of both the FOIA request at issue and the

14

15  [2] The CCD is a system of non-public consolidated databases that holds all of the current and archived data entered by consular officers from U.S. embassies and consulates around the world.  This includes, among other information, data regarding the diversity visa program, immigrant visas, non-immigrant visas, the visa revocation system, the

16  admissibility review and information service, and identity verification applications, as well as an interface to the consular lookout and support system.  The CCD generally contains a record of every U.S. visa application made

17  since 1997 with the accompanying adjudication decision concerning an applicant's eligibility for a visa, including decisions to issue, refuse, or revoke a visa.  Access to the CCD and its combined applications and databases is password protected and provides authorized users with real-time access to case-related information.  The database is

18  a crucial law enforcement tool, used to administer and enforce U.S. immigration law; to assess an alien's visa eligibility under the Immigration and Nationality Act and other applicable laws; and to prevent and track fraud.

19  [3] CLASS is the Consular Affairs automated lookout system that is used to support the visa and passport adjudication processes and ensure U.S. border security; it is a centralized system with complete linguistic software.

20  [4] The NIV system automates and streamlines posts' capabilities for processing and adjudicating applications for standard non-immigrant visas.  The system processes applicant, vessel, petition, diplomatic note, and referral data;

21  enables the user to view the results from namechecks; records the decision of the adjudicating officer; and prints the Machine Readable Visa ("MRV").

22  [5] The IVO system provides automated support to the adjudication of an immigrant or diversity immigrant visa application from individuals wishing to come to the United States with the intent to establish permanent residence.

23  IVO provides for the administration of federal law and regulations that govern the issuance or refusal of either visa type and is a case record and maintenance application used at overseas posts to review and complete the visa

24  adjudication.

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 6

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1   bureau's database system, conducted a search of the CCD using the subject's name, Julio Miguel
2   Cury David, and date of birth. The Consular Officer determined that this method of searching
3   the CCD was most appropriate for returning potentially responsive records. Furthermore, after
4   consultation with the Bureau of Consular Affairs, IPS determined that the CCD would be
5   reasonably likely to contain all records regarding the revocation of a visa because all actions
6   taken with respect to such matters are typically captured within the CCD (not email). All
7   releasable material was sent to Plaintiffs' counsel in the January 5, 2023, production.

8       20.     For Request F-2023-07562, a Consular Affairs Officer at the U.S. Embassy in
9   Santo Domingo searched the Non-Immigrant Visa Unit and the Consular Correspondence Unit's
10  shared drive and email account. The Consular Affairs Officer initially searched these electronic
11  record systems using the search term "David, Julio," with the date range January 22, 1968, to
12  July 19, 2023. Upon further consideration, the Department determined that a supplemental
13  search of these locations was warranted. A Consular Affairs Officer therefore conducted a
14  second search of these record systems using the search terms "Julio Cury," "Julio Miguel Cury,"
15  and "Julio Miguel David," with the date range January 22, 1968, to July 25, 2023. All releasable
16  material for both searches was sent to Plaintiffs' counsel in the October 13, 2023, and June 25,
17  2024, productions.

18                          **The Bureau of Diplomatic Security**

19      21.     The Bureau of Diplomatic Security ("DS") is responsible for providing a safe and
20  secure environment for the conduct of U.S. foreign policy. Every diplomatic mission in the
21  world operates under a security program designed and maintained by DS. In the United States,
22  some of DS's responsibilities include investigation of passport and visa fraud, conducting
23  personnel security investigations, and protection of the Secretary of State and high-ranking

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  foreign dignitaries and officials visiting the United States.  DS also trains foreign civilian law

2  enforcement officers in disciplines designed to reduce the threat and repercussions of terrorism

3  throughout the world.

4      22.    DS's records are decentralized.  There is no single database, application, or file

5  structure that can be searched and expected to cover all areas of DS in connection with a search

6  for records.  Also, because of security concerns and protocols, no single DS component can

7  conduct a complete and exhaustive search of the Bureau's records.  Access to many records is

8  limited to the DS component that generated the record.

9      23.    DS's Freedom of Information and Privacy Act Office ("DS/MGT/FOIA-PA")

10  reviews incoming requests to the Bureau, determines which DS components are reasonably

11  likely to have responsive records, and tasks those components with performing searches.  Based

12  on a review of search results, additional DS components may be tasked on an as-needed basis.  A

13  Division Team Lead in DS/MGT/FOIA-PA determined that only certain DS components would

14  have records responsive to Request F-2023-07562, and DS would not maintain records

15  responsive to Request F-2023-00026.  The Division Team Lead knew that DS components were

16  not reasonably likely to maintain records responsive to F-2023-00026 because the Team Lead

17  was aware that all material related to a visa application would be maintained in the CCD, not in a

18  DS record system.  As described above in Paragraph 17, CA/VO manages all aspects of visa

19  services, and the CCD is the central database for visa-related records.

20      24.    A Division Team Lead in DS/MGT/FOIA-PA, who was knowledgeable of both

21  the FOIA request at issue and the DS record systems, tasked the Regional Security Officer

22  ("RSO") at the U.S. Embassy in Santo Domingo to search RSO Santo Domingo components

23  reasonably likely to have responsive records.  An Assistant RSO, who was knowledgeable of

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

both the FOIA request at issue and the Embassy's record systems, conducted a search of the RSO Santo Domingo paper and electronic files. The Assistant RSO searched these files using multiple permutations of Mr. Cury's complete name, "Julio Miguel Cury David." The searches were limited to RSO files and were not restricted by date. All releasable material for both searches was sent to Plaintiffs' counsel in the October 13, 2023, and June 25, 2024, productions.

**The U.S. Embassy Santo Domingo, Dominican Republic**

25. The U.S. Embassy Santo Domingo is responsible for conducting activities that are aimed at promoting U.S. foreign policy objectives and protecting U.S. interests overseas, including U.S. citizens abroad. IPS only tasked U.S. Embassy Santo Domingo with searching for records responsive to Request F-2023-07562 because it understood that records regarding visa revocation would be stored in the CCD, as described above.

26. An Economic Officer at U.S. Embassy Santo Domingo, who was knowledgeable of both the FOIA request at issue and the Embassy's record systems, determined that, based on the subject of Request F-2023-07562, the only Embassy section reasonably likely to maintain responsive records was the Political/Economic Section. The Economic Officer conducted a search of her unclassified individual drive and the Political/Economic Section's shared electronic drive using the following search terms: "Cury," "Julio Cury," or "Julio Miguel Cury David." The search of these record systems was limited to January 1, 2001, to July 3, 2023.

27. An Office Management Specialist at U.S. Embassy Santo Domingo, who was knowledgeable of both the FOIA request at issue and the Embassy's record systems, also conducted a search of a classified shared electronic drive using the search term, "Julio Miguel Cury David." The search of this record system was limited to January 1, 2005, to July 1, 2023.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1    28.    All releasable material for both searches was sent to Plaintiffs' counsel in the

2    October 13, 2023 production.

3    ### III.    FOIA EXEMPTIONS CLAIMED

4    29.    This section addresses the FOIA Exemptions that the Department claimed for the

5    records that were denied in full or released in part in response to Plaintiffs' FOIA requests.

6    Because Plaintiffs do not challenge the Department's privacy-related withholdings, this section

7    does not address the Department's withholdings based on FOIA Exemptions 6 and 7(C).

8    ### FOIA Exemption 3 – Exempt by Statute

9    30.    5 U.S.C. § 552(b)(3) states that the FOIA does not apply to matters that are

10   "specifically exempted from disclosure by statute . . . , if that statute—(A)(i) requires that the

11   matters be withheld from the public in such a manner as to leave no discretion on the issue; or

12   (ii) establishes particular criteria for withholding or refers to particular types of matters to be

13   withheld." *Id.*

14   31.    The Department withheld information in 89 documents pursuant to Exemption 3

15   based on Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202(f).

16   32.    Section 222(f) states:

17       the records of the Department of State and of diplomatic and
         consular offices of the United States pertaining to the issuance or
18       refusal of visas or permits to enter the United States **shall be
         considered confidential** and shall be used only for the
19       formulation, amendment, administration, or enforcement of the
         immigration, nationality, and other laws of the United States . . . . [6]

20   33.    Section 222(f) of the INA qualifies as a withholding statute under Exemption 3, 5

21   U.S.C. § 552(b)(3). "Under section 222(f) the Secretary of State has no authority to disclose

22   material to the public. In that sense the confidentiality mandate is absolute; *all* matters covered

23

24   _____
     [6] 8 U.S.C. § 1202(f) (emphasis added).

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 10

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1   by the statute 'shall be considered confidential.'" *Medina-Hincapie v. Dep't of State*, 700 F.2d

2   737, 741-42 (D.C. Cir. 1983) (emphasis in original).  Section 222(f) applies not only to

3   information supplied by a visa applicant but also applies to any "information revealing the

4   thought-processes of those who rule on the application" and "the inner workings of the State

5   Department." *Id.* at 744.

6        34.    Here, the Department withheld 58 records in full and 31 records in part under

7   Exemption 3 pursuant to INA Section 222(f).  The withheld information in those records,

8   including information consolidated from various non-public interagency systems, was generated

9   by the Bureau of Consular Affairs' CCD and pertains directly to the issuance or refusal of a visa.

10  That information is therefore confidential under INA Section 222(f) and exempt from disclosure

11  under Exemption 3, 5 U.S.C. § 552(b)(3).

12                 **FOIA Exemption 5 – Deliberative Process Privilege**

13       35.    5 U.S.C. § 552(b)(5) states that the FOIA does not apply to "inter-agency or intra-

14  agency memoranda or letters which would not be available by law to a party other than an

15  agency in litigation with the agency . . . ." *Id.*  Exemption 5 protects from disclosure information

16  that is normally privileged in the civil discovery context, including information that is protected

17  by the deliberative process privilege.

18       36.    The deliberative process privilege protects documents that reflect advisory

19  opinions, recommendations, and deliberations that are part of the internal agency process by

20  which the government makes decisions or formulates policies.  The privilege is designed to

21  protect the integrity of the internal agency decision-making process, including candid discussions

22  between Federal Government employees, and to prevent public confusion due to premature

23  disclosure of decisions before the government has formulated a final opinion.

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 11

1    37.    For the deliberative process privilege to apply, the information withheld must be

2  both predecisional and deliberative.  Information is predecisional if (1) it reflects the

3  consideration process prior to the decision in question being made and (2) it is prepared to assist

4  decisionmakers in reaching that decision.  Information is deliberative if it is part of the give-and

5  take by which the government makes its decision.  Recommendations, draft documents,

6  proposals, suggestions, and other subjective documents reflecting the opinion of the writer,

7  rather than the policy of the agency, are the type of information that are protected as deliberative.

8    38.    As detailed in the attached *Vaughn* index, the Department asserted the

9  deliberative process privilege over information in 23 records.  The information the Department

10  withheld pursuant to the deliberative process privilege are employee deliberations regarding Mr.

11  Cury's eligibility for a non-immigrant visa, which are contained in the following categories of

12  records: (1) six records generated by the CCD entitled "NIV Applicant Case Lookup Detail," (2)

13  sixteen Law Enforcement Database System Reports generated by the CCD, and (3) one record

14  containing multiple documents related to a past visa application by Mr. Cury.

15    39.    The NIV Applicant Case Lookup Details are generated by the CCD and contain

16  biographic information, biometric indicators, and encounter data regarding Mr. Cury, which

17  were consolidated from various interagency systems.  The information withheld under

18  Exemption 5 in these records consists of deliberations by Bureau of Consular Affairs and other

19  agency employees regarding Mr. Cury's eligibility for a non-immigrant visa.

20    40.    The Law Enforcement Database System Reports are generated by the CCD and

21  contain biographic information, biometric indicators, and encounter data consolidated from

22  various interagency systems regarding Mr. Cury.  The information withheld under Exemption 5

23

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 12

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  in these records consists of deliberations by Bureau of Consular Affairs and other agency

2  employees regarding Mr. Cury's eligibility for a non-immigrant visa.

3      41.    The record containing multiple documents related to a past visa application by

4  Mr. Cury includes an NIV Individual Name Check document that details the results of

5  namechecks conducted while adjudicating visa applications for Mr. Cury; one page of analysis of

6  Mr. Cury's visa application prepared by a Bureau of Consular Affairs employee; and a number

7  of documents submitted to the Department by Mr. Cury in connection with his visa application.

8  The information withheld under Exemption 5 in this record consists of comments by Bureau of

9  Consular Affairs employees regarding Mr. Cury's eligibility for a non-immigrant visa.

10      42.    The information in these 23 records withheld pursuant to Exemption 5 is

11  predecisional because it predates the Department's final decisions on Mr. Cury's visa

12  applications.  The information is also deliberative because it reflects recommendations and

13  advice provided to the adjudicator regarding Mr. Cury's eligibility for the visas for which he

14  applied.

15      43.    Disclosure of this information would foreseeably harm the Department's

16  deliberative process by creating a substantial chilling effect on internal deliberations concerning

17  the adjudication of visa applications.  If Bureau of Consular Affairs and interagency employees

18  involved in the review and adjudication of visa applications believed that their advice and

19  confidential communications regarding individuals' eligibility for visas was subject to

20  disclosure, they would not be able to engage in free-flowing and candid discussions about visa

21  applicants' eligibility and, in turn, the visa adjudicators would not receive a full picture of the

22  considerations that are relevant to the final visa adjudication.

23

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 13

1      44.     The withheld information is, accordingly, exempt from release under Exemption

2    5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.

3                    **FOIA Exemption 7 – Law Enforcement Information**

4      45.     FOIA Exemption 7 protects from disclosure all "records or information compiled

5    for law enforcement purposes" that could reasonably be expected to cause one of the six harms

6    outlined in the Exemption's subparts.  5 U.S.C. § 552(b)(7).  Before an agency can invoke any of

7    the harms enumerated in Exemption 7, it must first demonstrate that the records or information at

8    issue were compiled for law enforcement purposes.

9      46.     The law to be enforced for Exemption 7 purposes includes administrative,

10   regulatory, civil, and criminal law.  Records pertaining to routine agency activities can qualify

11   for Exemption 7 protection when those activities involve a law enforcement purpose.  Although

12   the records must be created for some law enforcement purpose, there is no requirement that the

13   matter culminated in actual administrative, regulatory, civil, or criminal enforcement

14   proceedings.  In this case, the harm that could reasonably be expected to result from disclosure

15   concerns revealing sensitive law enforcement information related to law information techniques

16   and procedures.

17     47.     Here, the Department withheld 58 records in full and 1 record in part under

18   Exemption 7.  All the information withheld in full under Exemption 7 in this case was generated

19   from the CCD, which is maintained by CA/VO.  CA/VO manages all aspects of worldwide visa

20   services to foreign nationals who wish to enter the United States; interprets and applies

21   immigration laws and regulations; and acts as a point of contact for the public.  CA/VO also

22   serves as a liaison with other U.S. Government agencies with a role in the administration and

23   enforcement of U.S. immigration laws.  It routinely uses non-public law enforcement databases

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 14

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1   to support its core duties.  CA/VO is thus on the frontline of enforcing the U.S. Government's

2   immigration laws and regulations.

3        48.   The information withheld in part under Exemption 7 was used by Department

4   employees in the process of adjudicating a visa application for Mr. Cury.  Those employees'

5   responsibilities included investigation of visa applicants and ensuring adherence to U.S.

6   immigration laws and regulations.  This information was therefore generated for the law

7   enforcement purpose of enforcing the INA.

8        49.   The 59 records compiled by CA/VO that were withheld in full or in part under

9   Exemption 7 therefore meet the threshold requirement of that exemption, *i.e.*, the records were

10  compiled for the law enforcement purpose of enforcing the INA.

11                      *FOIA Exemption 7(E) – Law Enforcement Techniques and Procedures*

12       50.   FOIA Exemption 7(E) protects from disclosure law enforcement information that

13  "would disclose technique and procedures for law enforcement investigations or prosecutions, or

14  would disclose guidelines for law enforcement investigations or prosecutions if such disclosure

15  could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

16       51.   Exemption 7(E) requires that the agency demonstrate logically how the release of

17  the requested information might create a risk of circumvention of the law.  The agency need not

18  demonstrate an actual or certain risk of circumvention, but rather a reasonably expected risk.

19       52.   Here, the Department withheld 58 records in full and 1 record in part under

20  Exemption 7(E) because disclosure could reveal law enforcement techniques used by the

21  Department to assess an applicant's eligibility for a visa.  The 58 documents withheld in full

22  under Exemption 7(E) are records generated by the CCD and the products of searches of non-

23  public law enforcement databases that are accessible via the CCD.  The information withheld in

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 15

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1  part under Exemption 7(E) consists of a one-page document generated by the CCD entitled "NIV

2  Individual Namecheck Hit Report" that is the product of a search of a non-public law

3  enforcement database accessible via the CCD, and one page of investigatory analysis prepared

4  by a Bureau of Consular Affairs employee concerning a visa application by Mr. Cury.

5       53.     The information withheld in the 58 documents that were denied in full and the

6  "NIV Individual Namecheck Hit Report" relates to searches of non-public law enforcement

7  databases that are accessible via the CCD and which are used for official purposes by the

8  Department and other authorized law enforcement personnel.  Those law enforcement databases

9  serve as repositories for collected national security and criminal investigative information.  They

10  are essentially "one-stop" shops that allow CA/VO to query information and develop

11  investigative leads from a variety of source data using state-of-the-art analytical tools.  Access to

12  these databases is restricted; CA/VO officials have access to them in accordance with data-

13  sharing agreements that restrict further disclosure of the records or the information contained

14  therein.

15       54.     The disclosure of information generated through these searches could enable

16  individuals, including criminals and terrorists, to employ countermeasures to avoid detection,

17  thus jeopardizing CA/VO's role in enforcing immigration laws.  In particular, the CCD contains

18  information about the "name check" and other, similar law enforcement techniques that are not

19  publicly known.  Disclosure of these techniques could reasonably be expected to risk

20  circumvention of the law.

21       55.     The information withheld in the one page of investigatory analysis prepared by a

22  Bureau of Consular Affairs employee concerning a visa application by Mr. Cury details potential

23  law enforcement-related concerns regarding Mr. Cury's visa application and proposes next steps

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 16

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1   in the investigation.  If this information were disclosed, it would reveal law enforcement

2   techniques and procedures used in visa adjudications.  Release of that information could

3   reasonably be expected to lead to individuals using the information to evade law enforcement

4   efforts and defraud visa adjudicators, thus jeopardizing CA/VO's role in enforcing U.S.

5   immigration laws and regulations.

6       56.     Because disclosure of information from the CCD and other law enforcement

7   databases, as well as the techniques used to adjudicate visa eligibility and apply U.S.

8   immigration laws and regulations, would impede CA/VO and other law enforcement agencies'

9   effectiveness and potentially aid in circumvention of the techniques if disclosed, the Department

10  withheld this information pursuant to Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).

11              **IV.    SEGREGABILITY ANALYSIS**

12      57.     The Department conducted a line-by-line review of every page for all the

13  documents processed under the FOIA in this case and segregated and released all reasonably

14  segregable, non-exempt information.  The Department determined that no further segregation of

15  meaningful information in the documents could be made without disclosing information

16  warranting protection under the law.  As described above in Part I, the Department also re-

17  released a document when it realized that additional information could be released.

18              **V.    CONCLUSION**

19      58.     In summary, the Department searched all locations reasonably likely to contain

20  documents responsive to Plaintiffs' FOIA requests.  The Department released 3 documents in

21  full, released 32 documents in part, and withheld 58 documents in full.  The Department

22  carefully reviewed all documents addressed herein for reasonable segregation of non-exempt

23  information and implemented segregation when possible.  Otherwise, the Department determined

24

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 17

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

1 | that no segregation of meaningful information in the documents could be made without

2 | disclosing information warranting protection under the law.

3 |      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

4 | United States of America that the foregoing is true and correct to the best of my knowledge.

5 |      Executed on the 11th day of October 2024.

7 |      s/

8 |      TIMOTHY J. KOOTZ
     U.S. Department of State
     Global Information Services

DECLARATION OF TIMOTHY J. KOOTZ
2:23-cv-00499-JLR - 18

**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970