District Judge James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JULIO CURY, *et al.*,

Plaintiffs,

v.

DEPARTMENT OF STATE,

Defendant.

Civil Action No.: 2:23-cv-00499-JLR

ORAL ARGUMENT REQUESTED

PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR: May 6, 2025

Plaintiffs Julio Cury ("Cury") and Takao Yamada filed Freedom of Information Act ("FOIA") requests for various categories of records pertaining to the revocation of Cury's B1/B2 visa in 2011. After extensive negotiation, the parties resolved most of the issues in controversy, and with this filing Plaintiffs are further reducing the scope of the controversy to just one subcategory of withholdings from one subcategory of records. The Court may accordingly disregard any arguments about other matters and consider the issues withdrawn.

To be specific, Plaintiffs are now limiting their challenge to Defendant Department of State's ("State") withholding of information pursuant to Exemption (b)(3) and § 222(f) of the Immigration and Nationality Act—codified at 8 U.S.C. § 1202(f) ("INA § 222(f)"). Furthermore,



National Security Counselors
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672

Plaintiffs are limiting their challenge to documents created prior to 31 December 2011, in recognition of the fact that records created after 2011 would most likely not pertain to the 2011 revocation of Cury's visa but would instead be better understood as pertaining to his later applications for *other* visas.

With this in mind, however, the Court cannot intelligently adjudicate this dispute without more information from State. According to State's *Vaughn* index, eighty of the eighty-nine records are identified as "Undated," including fifty-four of the fifty-eight records denied in full. (*Vaughn* Index, Dkt. #22-1, *passim* (filed Oct. 11, 2024).) It is unclear why these records are described in this fashion, since some of the "Undated" records released in part are clearly dated. For example, Doc. No. A-00000590213 is a one-page letter dated 14 June 2011, (Sealed Ex. C at 1.) And according to the *Vaughn* Index, all twenty-five of the records described as "(59-83)" are "documents . . . submitted to the Bureau of Consular Affairs in connection with the NIV application for Mr. Cury David that was subsequently revoked" (*Vaughn* Index at 10-11), which necessarily implies that State knows when they were submitted.[1] As a result, the Court cannot decide which records are properly excluded from controversy until State identifies which records were created or received before 2012.

Similarly, all of the records denied in full cite multiple exemptions, but it is unclear how much of each record is covered by each exemption. Unless State provides more particularized exemption claims for the relevant documents, the Court must presume that at least *part* of each document denied in full is solely withheld under Exemption (b)(3), and it cannot exclude entire documents based on other exemptions.

---

[1] However, the fact that the 14 June 2011 letter is described this way is problematic, given that State revoked Cury's visa on 13 June 2011.



National Security Counselors
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672

Copies of the documents that Plaintiffs know or suspect to be still in controversy have been attached as Ex. A, and separately filed as Sealed Exs. B and C.[2].

**ARGUMENT**

FOIA requests are to be construed broadly and exemptions are to be construed narrowly. Exemption (b)(3) is no exception to this principle. Indeed, it says so itself that it covers "matters that are . . . *specifically* exempted from disclosure by statute." 5 U.S.C. § 552(b)(3) (emphasis added). The non-disclosure statute must "*require*[] that the matters be withheld from the public in such a manner as to leave *no discretion on the issue*," or must "establish[] *particular* criteria for withholding or refer[] to the *particular* types of matters to be withheld." *Id.* (emphasis added).

Yet State's argument cannot be reconciled with the statutory provision at hand, § 222(f) of the Immigration and Nationality Act—codified at 8 U.S.C. § 1202(f) ("INA § 222(f)")—which does *not* specifically exempt the relevant documents from disclosure, does *not* "require[e]" that the matters be withheld in such a manner as to leave no discretion on the issue, and does *not* "establish[] particular criteria for withholding or referring to the particular types of matters to be withheld." To support this argument, State cites a line of cases outside this Circuit which, in clear contradiction to FOIA's guiding presumption of disclosure, *assume* that documents regarding a visa revocation count as records "pertaining to the issuance or refusal of visas" for Exemption (b)(3) purposes. This is despite the statutory requirement that a statute exhibit: (1) specificity; (2) a removal of discretion from the agency; and (3) the clear delineation of what kinds of matters are to be withheld.

[2] The only redactions from Sealed Ex. C appear to be a small box in the top left corner of each page, including blank pages.



National Security Counselors
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672

The question before the Court on this issue is straightforward: does the Court follow the lead of the D.C. Circuit, Second Circuit, and Eleventh Circuit and hold that INA § 222(f) applies to visa cancellations and revocations, or does it follow the lead of other district courts in this district, the District of Connecticut, and the Southern District of Florida and hold that INA § 222(f) does *not* apply to visa cancellations and revocations? Plaintiffs freely acknowledge that if the Court follows the case law of the other circuit courts, they lose this argument, but they maintain that the other district courts have the better argument.

Simply put, this case rises and falls on two fundamental principles: 1) FOIA exemptions are to be narrowly construed; and 2) *expressio unius est exclusio alterius*—the expression of one thing implies the exclusion of others. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 10, 107 (2012).

This Circuit summarizes this point thusly:

> The Supreme Court has interpreted the disclosure provisions of FOIA broadly, noting that the act was animated by a "philosophy of full agency disclosure." "[D]isclosure, not secrecy, is the dominant objective of the Act"[]. In order to prevent disclosure of a limited class of sensitive government documents, FOIA lists nine statutory exemptions. Unlike the disclosure provisions of FOIA, its statutory exemptions "must be narrowly construed." Where the government withholds documents pursuant to one of the enumerated exemptions of FOIA, "the burden is on the agency to sustain its action."

*Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1079 (9th Cir. 2004) (citations omitted) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989), and *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361, 366 (1976)). In other words, if one reasonable reading of a statute would lead to disclosure, and another reasonable reading of a statute would lead to withholding, the Court must adopt the first reading. This rule led another court in this district to conclude, "The language of the statute specifically only includes [State] records pertaining to the issuance of refusal of visas or permits to enter the United States; it is silent as to requests for hardship



National Security Counselors
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672

waivers. Without some legal authority to broaden the reach of this statutory language, the Court cannot find or assume that waiver applications fit within the 'narrow compass' of the § 1202(f) exemption." *Guerra v. United States*, No. 09-1027, 2010 U.S. Dist. LEXIS 132999, at *5 (W.D. Wash. Dec. 15, 2010) (holding that the D.C. Circuit's opinion in *Medina-Hincapie v. Dep't of State*, 700 F.2d 737 (D.C. Cir. 1983), was incompatible with "FOIA's goal of broad disclosure"). *See also Mantilla v. Dep't of State*, No. 12-21109, 2012 U.S. Dist. LEXIS 136152, at *11 (S.D. Fla. Sept. 24, 2012) ("Consistent with *Halpern* [*v. FBI*, 181 F.3d 279 (2d Cir. 1999)], the undersigned construes Section 1202(f) of the INA narrowly and finds that it does not encompass the revocation of visas.").

The question then becomes, is Plaintiffs' reading of the statute, bolstered by these other district court opinions, reasonable? To answer this, the District of Connecticut looked to the statutory interpretation maxim *expressio unius est exclusio alterius*:

> Relying solely on the plain language of the statute and the interpretive doctrine of *expressio unius*, the statute cannot be read to apply to visa revocations. That is, while both "issuance" and "refusal" of visas are explicitly mentioned, "revocation" is not. *See* 8 U.S.C. § 1202(f). Clearly, the issuance of, or the refusal to issue, a visa is not a revocation. Thus, on the plain language of the statute, records pertaining to visa revocation are not protected under the INA, and CBP improperly withheld information under Exemption 3.
>
> Even if the court were to look past the plain language of the statute, however, the legislative history of the INA generally confirms this reading. When the 104th Congress passed the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), a bill amending the INA (including § 222), it continued to treat visa revocations separately from issuances and refusals. *See* Pub. L. 108-458, 118 Stat. 3638. For example, § 5304 of that Act, entitled "Revocation of Visas and Other Travel Documentation," can be contrasted with § 5302, "Visa Application Requirements." *Id.* The fact that the two procedures are addressed in distinct sections of the legislation evidences an intent on the part of the lawmakers that visa revocation be treated as distinct from visa application (i.e., issuance or refusal of visas). Beyond mere titles, however, the legislation made discrete distinctions substantively. *See* Pub. L. 108-458 § 5304, 118 Stat. 3638, 3736 (changing judicial review for visa revocation, but not for issuance or denial). This clear legislative



National Security Counselors
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672

> intent, when read with the plain language of the statute, leads to the conclusion that 8 U.S.C. § 1202(f) does not apply to visa revocation.

*El Badrawi v. DHS*, 583 F. Supp. 2d 285, 311-12 (D. Conn. 2008) (footnotes omitted). While the Second Circuit ultimately invalidated this opinion, *see Spadaro v. CBP*, 978 F.3d 34, 46-47 (2d Cir. 2020), that is of little moment in this case. Reversal by the Second Circuit only means that *El Badrawi* is not controlling precedent *in the Second Circuit*; this Court is still free to adopt its reasoning as its own. This would be particularly appropriate, given that this Circuit has a long history of reliance on this doctrine. *See*, *e.g.*, *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005) ("The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'") (quoting *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)).

State's argument relies entirely on an inadmissible—and conclusory—legal opinion expressed by a fact witness: "The withheld information in these records . . . pertains directly to the issuance or refusal of a visa." (Kootz Decl., Dkt. #22, ¶ 34 (filed Oct. 11, 2024).) However, it is well-accepted that legal conclusions, unlike factual assessments, have no place in witnesses' declarations, as they "intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law." *United States ex rel. Mossey v. Pal-Tech, Inc.,* 231 F. Supp. 2d 94, 98 (D.D.C. 2002). "[Expert] testimony cannot be used to provide legal meaning or interpret the policies as written." *McHugh v. United States Automobile Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (citing *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (expert testimony is not proper for issues of law because the role of experts is to interpret and to analyze factual evidence rather than to testify about the law)). *See also Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051,



National Security Counselors
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672

1058-59 (9th Cir. 2008) (district court did not abuse its discretion when it excluded expert-witness testimony that contained legal conclusions). The Court should accordingly pay little heed to Kootz's unadorned opinion about whether the statute encompasses visa revocations.

The legal reasoning behind this position boils down to the position taken by the Second Circuit in *Spadaro*, which hinges on the meaning of the phrase "pertaining to": "Thus, we conclude that the use of the broad phrase 'pertaining to' plainly gives the statute a wider reach than mere issuances and refusals." 978 F.3d at 46. However, by focusing on the philosophical breadth of this phrase, the Second Circuit failed to recognize the dangers of overreliance on a phrase like this: "A request for all documents 'relating to' a subject is usually subject to criticism as overbroad since life, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion." *Massachusetts v. Dep't of Health & Human Servs.*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989) (paraphrasing Oliver W. Holmes, Jr., *The Common Law* 1 (1945)). Courts across the country have recognized the vagueness inherent in the phrase "pertaining to." *See Rutila v. DOT*, No. 16-2911, 2022 U.S. Dist. 115669, at *26 (N.D. Tex. June 30, 2022) (quoting *id.*); *Oppenheimer v. Williams*, No. 20-4219, 2021 U.S. Dist. LEXIS 170057, at *10 (D.S.C. Sept. 8, 2021) (same); *Boundaoui v. FBI*, No. 17-4782, 2020 U.S. Dist. LEXIS 174663, at *20 (N.D. Ill. Sept. 23, 2023) (same); *In re Bernal*, No. 18-21951, 2018 U.S. Dist. LEXIS 212722, at *27 (S.D. Fla. Dec. 18, 2018) (same); *CNN, Inc. v. FBI*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017) (same); *Carter v. Archdale Police Dep't*, No. 13-613, 2014 U.S. Dist. 61265, at 18 (M.D.N.C. May 2, 2014) (same); *Oklahoma v. EPA*, No 13-726, 2013 U.S. Dist. LEXIS 177381, at *12-13 (W.D. Okla. Dec. 18, 2013) (same).

According to this widespread interpretation of the phrase "pertaining to," every document in the State Department would be exempt under INA § 222(f) because they all relate *in some way*


National Security Counselors
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672

to visa issuances and denials. While such an extreme position is not practical, the position actually being taken in this case is not far removed. If the Court were to validate this position, it would effectively be giving a blank check to State to refuse to even process records even tangentially related to some visa somewhere, in clear violation of the rule that exemptions must be narrowly construed.

In contrast, Plaintiffs ask the Court to apply Justice Joseph Story's approach to the interpretation of constitutional texts that "every word employed in the constitution is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." Joseph Story, *Commentaries on the Constitution of the United States* 157-58 (1833). The U.S. Supreme Court has consistently held that the "starting point" of statutory interpretation is "the language of the statute itself," *Randall v. Loftsgaarden*, 478 U.S. 647, 656 (1986), and that the "cardinal canon" of statutory interpretation is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *Animal Legal Def. Fund v. USDA*, 935 F.3d 858, 869 (9th Cir. 2009).

Accordingly, since reasonable arguments exist on both sides of this issue, but only Plaintiffs' argument respects both the "dominant objective of [FOIA]," *Rose*, 425 U.S. at 361, and a common-sense reading of a common phrase, the Court should continue to hold that INA § 222(f) does not apply to visa revocations and reject State's Exemption (b)(3) withholdings.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Cross-Motion.



National Security Counselors
1451 Rockville Pike, Suite 250
Rockville, MD 20852
501-301-4672

Date: March 25, 2025

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq., WSBA #60671
National Security Counselors
1451 Rockville Pike
Suite 250
Rockville, MD 20852
501-301-4672
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*

I certify that this memorandum contains 2626 words, in compliance with the Local Civil Rules.