UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIO CURY, et al., | CASE NO. C23-0499JLR |
| Plaintiffs, | ORDER |
| v. | |
| UNITED STATES DEPARTMENT OF STATE, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court are cross-motions for summary judgment filed by (1) Defendants the United States Department of State ("State") and the Department of Homeland Security (together, "Defendants) and (2) Plaintiffs Julio Cury and Takao Yamada (together, "Plaintiffs"). (State MSJ (Dkt. # 21); Pls. Resp. (Dkt. # 38); Pls. Cross-MSJ

//

//

(Dkt. # 40);[1] State Reply (Dkt. # 41); Pls. Reply (Dkt. # 42).) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[2] the court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' cross-motion for summary judgment.

## II.   BACKGROUND

This case arises under the Freedom of Information Act ("FOIA"). (*See generally* Compl. (Dkt. # 1).) Plaintiffs originally asserted claims arising from five requests for information they made to State and to the Department of Homeland Security ("DHS") and its sub-agencies. (*See id.*) They now, however, challenge only State's response to one of their requests. (*See* Pls. Resp. at 1.) The court sets forth the factual and procedural background relevant to Plaintiffs' remaining claim below.

Mr. Cury is a citizen and resident of the Dominican Republic, and Mr. Yamada is a legal resident of Washington State. (Compl. ¶¶ 3-4.) In 2022, State revoked Mr. Cury's B-1/B-2 nonimmigrant visa,[3] citing Mr. Cury's alleged commission of a crime of moral turpitude. (*Id.* ¶ 9.) On October 1, 2022, Plaintiffs submitted a FOIA request to State for "copies of all records, including emails, pertaining to the revocation of the visa

---

[1] Plaintiffs' response to State's motion for summary judgment and Plaintiffs' cross-motion for summary judgment are nearly identical. (*Compare* Pls. Resp.; *with* Pls. Cross-MSJ.) For simplicity, the court generally cites only Plaintiffs' response to State's motion in this order.

[2] Plaintiffs request oral argument; Defendants do not. The court finds that oral argument will not assist it in resolving the parties' motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[3] A B-1/B-2 visa allows a nonimmigrant to enter the United States temporarily for a combination of business and tourism purposes. *See* U.S. Department of State – Bureau of Consular Affairs, *Visitor Visa*, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited July 29, 2025).

previously held by Mr. Cury." (*Id.* ¶ 10; Kootz Decl. (Dkt. # 22) ¶ 6, Ex. 2.) State acknowledged receipt of the request and assigned it control number F-2023-00026. (Compl. ¶ 11; Kootz Decl. ¶ 7).) On January 5, 2023, State informed Plaintiffs that it had located 89 records responsive to Request F-2023-00026. (Kootz Decl. ¶ 8 & n.1.) State then released one document in full and 30 documents in part. (*Id.* ¶ 8; *see id.* ¶ 5, Ex. 1 (*Vaughn* index[4]).) It withheld 58 documents in full. (*Id.* ¶ 8.) On February 28, 2023, Plaintiffs appealed State's response. (Compl. ¶ 13.) They filed this lawsuit on April 3, 2023, after receiving no substantive response to their appeal. (*Id.* ¶ 14.)

The parties met and conferred for several months after Plaintiffs initiated this action in an effort to narrow the issues remaining for the court's decision. (*See generally* Dkt. (granting multiple stipulations to extend deadlines).) Then, after State filed its motion for summary judgment on October 11, 2024, the parties sought several extensions of the briefing deadlines as they continued to narrow the issues. (State MSJ; *see generally* Dkt.) Plaintiffs filed their response to State's motion for summary judgment and cross-motion for summary judgment on March 25, 2025. (Pls. Resp.; Pls. Cross-MSJ.) In their response and cross-motion, Plaintiffs state that they "are limiting" their challenge in this action to State's allegedly wrongful withholding of documents created before December 31, 2011 that pertain to the revocation of Mr. Cury's visa under FOIA

---

[4] Under FOIA, an agency must "notify the person making [a] request of [its] determination and the reasons therefor[.]" 5 U.S.C. § 552(a)(6)(A)(i)(I). An agency may do so by providing a *Vaughn* index, in which it must "(1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *See Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1228 (W.D. Wash. 2021).

1  Exemption 3 and § 222(f) of the Immigration and Nationality Act ("INA"), codified at 8

2  U.S.C. § 1202(f). (Pls. Resp. at 1; Pls. Cross-MSJ at 1.) The motions are now fully

3  briefed and ripe for decision.

### III.   ANALYSIS

State argues that the court should grant its motion for summary judgment because documents pertaining to the revocation of Mr. Cury's visa are exempt from disclosure under FOIA Exemption 3 and INA § 222(f). (State MSJ at 13-16.) Plaintiffs disagree. They urge the court to hold, instead, that visa revocation documents are outside the scope of Exemption 3 and INA § 222(f) and, as a result, State must produce the documents Mr. Cury requested. (*See generally* Pls. Resp.; Pls. Cross-MSJ.) The court agrees with State that the withholding of visa revocation documents is justified by Exemption 3 and INA § 222(f) and, for the reasons set forth below, grants State's motion for summary judgment.[5]

---

[5] In the introduction to their response to State's motion for summary judgment and their cross-motion for summary judgment, Plaintiffs assert that State's *Vaughn* index fails to provide sufficient detail because it does not specify which documents were created before 2012 or whether State withheld certain documents in part or in full under Exemption 3. (*See* Pls. Resp. at 2; Pls. Cross-MSJ at 2.) Plaintiffs do not, however, address the alleged deficiencies in the *Vaughn* index in the argument portion of their response and cross-motion. (*See generally* Pls. Resp.; Pls. Cross-MSJ.) Plaintiffs also provide "[c]opies of documents that [they] know or suspect to still be in controversy" as attachments to their response and cross-motion, but neither explain the significance of the documents, nor discuss how the documents support their cross-motion for summary judgment or their opposition to State's motion. (Pls. Resp. at 3; Pls. Cross-Mot. at 3; *see* Dkt. # 40-1 (exhibit A); Dkt. # 39 (sealed exhibits B and C).) Because it is unclear what relief Plaintiffs seek with respect to State's *Vaughn* index, the court denies Plaintiffs' cross-motion for summary judgment to the extent Plaintiffs seek an order that State's *Vaughn* index is inadequate as a matter of law.

FOIA Exemption 3 protects from public disclosure records that are "exempted from disclosure by statute," if the statute at issue requires that the records be withheld "in such a matter as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]" 5 U.S.C. § 552(b)(3). INA § 222(f), meanwhile, provides that:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States[.]

8 U.S.C. § 1202(f). It has long been established that INA § 222(f) is a qualifying statute under Exemption 3. *See, e.g.*, *Wiener v. F.B.I.*, 943 F.2d 972, 982 (9th Cir. 1991) (citing *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741–42 (D.C. Cir. 1983)). Plaintiffs argue, however, that although INA § 222(f) may justify withholding documents specifically relating to the "issuance or refusal" of a visa, it cannot be read to justify withholding documents relating to the cancellation or revocation of a visa. (*Id.* at 4.)

The Ninth Circuit has not considered whether the protections of INA § 222(f) extend to visa revocation documents. As Plaintiffs acknowledge, however, the only two Courts of Appeals to consider that question have held that they do. (*See* Resp. at 4.)

The Second Circuit was the first Court of Appeals to rule that documents relating to the revocation of a visa "f[e]ll within the ambit of INA § 222(f)." *Spadaro v. United States Customs & Border Prot.*, 978 F.3d 34, 45 (2d Cir. 2020). The *Spadaro* court observed that the "use of the word 'pertaining' ma[de] clear that the reach of the statute"

was wider "than mere issuances and refusals." *Id.* at 46.  Applying this broad interpretation of "pertaining to" to visa revocation records, the court concluded that "it [was] clear that the revocation of a visa pertains to the issuance of a visa because they are so closely related – namely, a revocation constitutes a nullification of that issuance." *Id.* Thus, because "the issuance and revocation of visas represent two sides of the same coin[,]" *id.* (quoting *Soto v. U.S. Dep't of State*, No. 14-604 (RDM), 2016 WL 3390667, at *4 (D.D.C. June 17, 2016)), the Second Circuit held that "the plain language of INA § 222(f) encompasses revocation documents." *Id.*  Four years later, the Eleventh Circuit adopted *Spadaro*'s reasoning and held that visa revocation documents "unambiguously fall within the 'pertaining to' scope of § 222(f) and must be kept confidential." *Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 910 (11th Cir. 2024).  The court finds *Spadaro* and *Jimenez* persuasive, and holds that visa revocation documents are within the scope of INA § 222(f) and are thus exempted from FOIA disclosure under Exemption 3.[6]

Plaintiffs urge the court to reject *Spadaro* and *Jimenez* and to follow instead three pre-*Spadaro* district court cases that interpreted INA § 222(f) more narrowly.  (Pls. Resp. at 4.)  Plaintiffs' cases, however, either are not on point or have been explicitly or implicitly overruled.  First, Plaintiffs direct the court to *Guerra v. United States*, No. C09-1027RSM, 2010 WL 5211613, at *2 (W.D. Wash. Dec. 15, 2010).  Visa revocation records, however, were not at issue in that case.  *See generally id.*  Rather, the court held

---

[6] Plaintiffs do not argue that records pertaining to visa cancellations should be treated differently than records pertaining to visa revocations.  (*See generally* Pls. Resp.; Pls. Cross-MSJ.)  In any event, the court cannot identify any legally significant distinction between visa cancellations and visa revocations in the FOIA context.

that applications for J-1 hardship waivers[7] did not fit within the "narrow compass" of INA §222(f)'s exemption for records "pertaining to the issuance or refusal of visas[.]" *Id.* at *2.  Second, Plaintiffs cite *El Badrawi v. Dep't of Homeland Security*, in which the District of Connecticut, relying on the canon of *expressio unius est exclusio alterius*,[8] reasoned that "while both 'issuance' and 'refusal' of visas are explicitly mentioned [in INA § 222(f)], 'revocation' is not."  583 F. Supp. 2d 285, 311 (D. Conn. 2008).  Accordingly, the *El Badrawi* court concluded that visa revocation documents were outside the scope of INA § 222(f) and were not exempt from disclosure.  *Id.*  The Second Circuit, however, expressly overruled *El Badrawi* in *Spadaro*.  *Spadaro*, 978 F.3d at 46-47 (declining to apply the *expressio unius* doctrine and rejecting the reasoning in *El Badrawi*).  Finally, Plaintiffs point to *Mantilla v. U.S. Dep't of State*, in which the Southern District of Florida also concluded that INA § 222(f) did not apply to visa

---

[7] J-1 visas are issued to nonimmigrants, including students, scholars, and summer workers, who have been approved to participate in exchange visitor programs in the United States.  *See* U.S. Department of State – Bureau of Consular Affairs, *Exchange Visitor Visa*, https://travel.state.gov/content/travel/en/us-visas/study/exchange.html (last visited July 29, 2025). Absent a waiver, participants in exchange visitor programs must return to their home countries for at least two years before receiving certain other types of visas.  *See id.*

[8] "The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'"  *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005) (quoting *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)).  "It is a fundamental canon[,]" however, "that where the 'statutory text is plain and unambiguous,' a court 'must apply the statute according to its terms.'"  *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) (quoting *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)).  Because the court agrees that INA § 222(f) is unambiguous as it pertains to visa revocation documents, it declines Plaintiffs' invitation to apply the *expressio unius* doctrine here.  *See Soto*, 2016 WL 3390667, at *4 (rejecting the *expressio unius* canon because the plain text of the statute was clear that "records that document the revocation of a visa—or that were relied upon in the course of revoking a visa—could 'pertain to the issuance or refusal of a visa." (quoting 8 U.S.C. § 1202(f)) (cleaned up).

revocation documents. No. 12-21109-CIV, 2012 WL 4372239, at *3 (S.D. Fla. Sept. 24, 2012). The Eleventh Circuit, however, implicitly overruled *Mantilla* when it held that "visa revocation records unambiguously fall within the 'pertaining to' scope of § 222(f) and must be kept confidential." *Jimenez*, 119 F.4th at 910 (rejecting the plaintiffs' reliance on the *expressio unius* canon). The court finds none of Plaintiffs' cases persuasive. Therefore, the court grants State's motion for summary judgment and denies Plaintiffs' cross-motion for summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS State's motion for summary judgment (Dkt. # 21) and DENIES Plaintiffs' cross-motion for summary judgment (Dkt. # 40). The parties are ORDERED to file, by no later than **August 13, 2025**, a joint statement identifying the issues, if any, remaining for the court's determination and proposing a plan for resolving those issues.

Dated this 29th day of July, 2025.

JAMES L. ROBART
United States District Judge